UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUPPORT COMMUNITY, INC.,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>MPH INTERNATIONAL LLC,<br><br>Defendant/Counterclaim Plaintiff. | Case No. 23-cv-04911-JSW<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION AND GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 30, 33 |

Now before the Court for consideration are the motion to dismiss, filed by Plaintiff and Counterclaim Defendant Support Community, Inc. ("SC"), and the motion to compel arbitration, filed by Defendant and Counterclaim Plaintiff MPH International LLC ("MPH"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it DENIES MPH's motion to compel arbitration and GRANTS, IN PART, AND DENIES, IN PART, SC's motion to dismiss.

**BACKGROUND**

**A.    Procedural Background.**

On January 12, 2023, SC filed a complaint in the Superior Court for the State of California in Redwood City ("Superior Court"). (Dkt. No. 1, Notice of Removal, Ex. B.) MPH initially defaulted. On May 8, 2023, after the Superior Court set aside MPH's default, MPH demurred to SC's fraud claim. On September 18, 2023, the Superior Court overruled the demurrer. (*See* Notice of Removal, ¶¶ 1-3.)

On September 25, 2023, MPH filed an answer and asserted arbitration as an affirmative defense. MPH's answer included a cross-complaint for copyright infringement, trade secret

misappropriation, breach of contract, reasonable reliance/unjust enrichment, and tortious interference with contractual and business relationships.  MPH removed the action to this Court on the basis of federal question jurisdiction and asserted the Court had supplemental jurisdiction over its state law claims.  (*Id.* ¶¶ 7, 10.)

On October 24, 2023, the parties filed a stipulation permitting MPH to "amend its answer and counterclaims (currently entitled Answer and Cross-Complaint)" by October 30, 2023.  Pursuant to that stipulation, SC would respond in accordance with the Federal Rules of Civil Procedure.  (*See* Dkt. No. 17.)

On November 7, 2023, MPH filed an amended counterclaim ("Counterclaim), which did not include an answer. [1]  (Dkt. No. 20.)  On November 14, 2023, SC moved to strike the Counterclaim and moved to dismiss MPH's counterclaims for copyright infringement, trade secret misappropriation, and breach of contract.

On January 9, 2024, the Court granted the motion to strike and ordered MPH to file a combined answer and counterclaim.  The Court also dismissed the copyright infringement claims, with leave to amend, dismissed the trade secrets claim, in part, and determined MPH stated a claim for breach of contract.  (Dkt. No. 26.)

MPH filed its Second Amended Answer ("Answer") and Counterclaims ("Counterclaims") on January 31, 2024.  (Dkt. No. 28.)

**B.     Factual Background.**

The parties' business relationship began in 2016 and fell apart in 2022.  According to SC, the parties entered and executed a "written Development Program Agreement" through their principals, Patrick Morrison and Michael Hogan, in person at "MPH's offices and primary place of business in Belmont, California."  (Compl. ¶¶ 15, 19.)  MPH initially denied that the parties executed an agreement.  However, MPH now admits those allegations.  (Answer ¶¶ 15, 19; *see also* Counterclaims ¶¶ 13-14.)  SC did not file a copy of the parties' agreement with its Complaint.

---

[1]     MPH filed an amended counterclaim on October 30, 2023 but it did not include a caption page.  (Dkt. No. 18.)

2

MPH has filed a document entitled "MPH International Development Program Agreement" with its pleading and with its motions. That document is not signed, but MPH contends it the operative agreement.[2] (*See* Answer and Counterclaims, Ex. A; *see also* Dkt. No. 30-1, Declaration of Michael Hogan ("Hogan Decl. I"), ¶ 4, Ex. A.)

SC alleges MPH agreed to develop software applications for SC. SC also alleges that MPH granted SC a "'fully paid up, irrevocable worldwide, sub-licensable, transferable, royalty-free license to all of the software and related software repositories relating to [Support Community Apps].'" (Compl. ¶ 1; *but see* ¶¶ 15, 21 (omitting references to "all of the software and related software repositories" when alleging scope of license).)[3] MPH alleges that it agreed to deliver "a software 'Product' consisting of a functional application in executable software code, along with a non-exclusive limited license entitling [SC] to use the software in connection with [SC's] business." (Counterclaims ¶ 15.) MPH also alleges it did "not assign to [SC] the copyrights, or any other intellectual property embodied in the Product, including the source code." (*Id.* ¶ 16.) "The copyrights to the software were always to remain, and have always remained, with MPH." (*Id.*) MPH alleges it "never promised or agreed to deliver the source code to [SC]" because MPH operated and maintained the "Product." (*Id.*)

The MPH DPA states that "MPH will develop social networking software described in Exhibit A, which is a six (6) page document entitled "Proposal: Family Support Centers Community Platform Development." Section 2 of the MPH DPA is entitled "License of Products; Provision of Services" and provides, in part, that "[s]ubject to the terms and conditions of this Agreement and payment of fees described in Exhibit B, MPH grants [SC] a fully paid up, irrevocable, worldwide, sub-licensable, transferable, royalty-free license to Products without duty of accounting, subject to" three additional provisions. (MPH DPA §§ 2.2, 2.2.1, 2.2.2, 2.2.3.) "No rights are conferred other than as mentioned herein." (*Id.* § 2.2.4.)

---

[2] The Court refers to the document attached to MPH's Answer and Counterclaims as the "MPH DPA."

[3] SC does not provide a citation for the quotes.

3

The MPH DPA also contains an arbitration provision:

> The parties agree that any and all disputes or controversies of any nature between them arising at any time shall be determined by binding arbitration in accordance with the Commercial Arbitration Rules of the AAA before a single neutral arbitrator ("Arbitrator") in Redwood City, California.  The Arbitrator shall be mutually agreed upon by the parties; if the parties are unable to agree on an Arbitrator, the Arbitrator shall be appointed by the AAA.  The Arbitrator shall determine how all expenses relating to the arbitration shall be paid, including without limitation, the respective expenses of each party, the fees of the arbitrator and the administrative fee of the American Arbitration Association.  Any final outcome of such arbitration shall be final and binding as to all matters of substance and procedure, and may be enforced by a petition to a court of competent jurisdiction located in Redwood City, California, which may be made ex parte, for confirmation and enforcement of the award.  *In addition, either party may seek equitable, non-monetary relief at any time in a court of competent jurisdiction located in Redwood City, California without thereby waiving its right to arbitration of any dispute or controversy.*  All proceedings shall, to the extent permitted by law, be closed to the public and confidential and all records relating thereto shall be permanently sealed, except as necessary to obtain court confirmation of the arbitration award.

(MPH DPA § 7.4 (emphasis added).)

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A.    The Court Denies the Motion to Compel Arbitration.**

   **1.    Applicable Legal Standards.**

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects "the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).[4]  The Court generally determines two gateway issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)

---

[4]    The Supreme Court recently clarified that "federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, -- U.S. --, 142 S. Ct. 1708, 1713 (2022).

4

(citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). The parties may delegate threshold issues of arbitrability to the arbitrator, but "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

**2.    MPH Has Met Its Burden to Show An Arbitration Agreement Exists.**

MPH bears the burden to show by a preponderance of the evidence that an arbitration agreement exists. *See Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)). MPH relies on the unsigned MPH DPA as proof that the parties agreed to arbitrate. As noted earlier, MPH previously denied the parties executed an agreement. SC argues the Court should treat those statements as admissions and preclude MPH from relying on the arbitration clause in the MPH DPA.

"Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Mr. Hogan attests that MPH's statements were based on the fact that he "could not find the physical ink-signed Agreement nor any copies." (Hogan Decl. I ¶ 11.) He also attests that the MPH DPA attached to his declaration is the parties' agreement. (*Id.*)

There is circumstantial evidence in the record to support Mr. Hogan's attestations. SC's principal Patrick Morrison submitted a declaration in opposition to MPH's motion and does not deny signing the MPH DPA. He also does not deny that the agreement he contends the parties signed contained an arbitration agreement.[5] (*See generally* Dkt. No. 32-2, Declaration of Patrick Morrison, ¶¶ 1-8.) SC also alleged that the parties executed a development program agreement "in person" in December 2016, and the Complaint contains other allegations that conform to the language in the MPH DPA, including allegations about the scope of the parties' license and its notice requirements. (*See* Compl. ¶¶ 13, 15-19, 21, 63 and *compare with* MPH DPA §§ 2.2, 3.1,

---

[5]    SC argues that the parties entered into a second agreement and that this dispute is not covered by the parties' first agreement. That is a matter of whether the dispute falls within the scope of the arbitration clause.

5

7.6.) SC has not amended those allegations, which also can be construed as admissions. *Am. Title*, 861 F.2d at 226. Moreover, SC's requests for admission refer to an "MPH International Development Program Agreement." (*See* Dkt. No. 32-1, Declaration of Gary Sedlik, ¶¶ 4, Ex. A (MPH Responses to SC Requests for Admission Nos. 2-7).)

Based on the existing record, the Court concludes MPH has shown by a preponderance of the evidence that the parties agreed to arbitrate disputes.

    **3.    SC Has Met Its Burden to Show MPH Waived Its Right to Arbitrate.**

SC also argues MPH has waived its right to arbitrate the dispute, which requires it to show: (1) MPH knew of an existing right to compel arbitration; and (2) MPH acted inconsistently with that right. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). The Court looks to the totality of MPH's actions to determine if it made "an intentional decision not to move to compel arbitration and … actively litigate[d] the merits of [this] case for a prolonged period of time in order to take advantage of being in court." *Newirth v. Aegis Sen. Communities, LLC*, 931 F.3d 935, 941 (9th Cir. 2019).

There are some facts that cut against a finding of waiver. First, this is not a case where MPH asserted the right to arbitration after years of litigation. Yet, the case has been pending for over a year. *See, e.g., Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (finding waiver where defendant failed to raise right to arbitrate until nearly a year after case was filed). Second, although MPH responded to SC's discovery requests, it has not served any requests of its own. *See, e.g., Evitt v. Experian*, No. 23-cv-5294-LK, 2024 WL 1513614, at *12 (E.D. Wash. April 8, 2024) (no waiver by litigation conduct where defendant had not issued discovery requests and had not filed substantive motions until motion to compel arbitration). Third, after this Court ruled on SC's motion to strike and to dismiss, MPH raised the arbitration agreement as affirmative defense. MPH also noted that it filed its counterclaim "subject to and without waiver" of its right to arbitrate or to move to compel filed a motion to compel arbitration.[6] (Answer at 13:12-13, Counterclaims at 14:19-24.) Although those statements alone are not sufficient to overcome SC's

---

[6] MPH did not raise the issue of arbitration in its opposition brief to that motion. (*See* Dkt. No. 22.)

6

waiver argument, the Court has considered them in its analysis. *See, e.g., Martin,* 829 F.3d at 1125.

Cutting against those facts are that MPH did not immediately move to compel arbitration in Superior Court. Instead, MPH demurred to SC's fraud claim. "[A]lthough filing a motion to dismiss that does not address the merits of the case is not sufficient to constitute an inconsistent act, seeking a decision on the merits of an issue may satisfy this element." *Martin,* 829 F.3d at 1125. In *Martin*, the defendants argued they had not acted inconsistently with the right to arbitrate when they moved to dismiss because they only sought a ruling on the "pleadings." *Id.* at 1126 n. 4. The Ninth Circuit did not find the defendant's distinction persuasive: "[w]hen defendants move for dismissal with prejudice on a key merits issue that would preclude relief as to one or more of plaintiffs' claims, as they did here, they are seeking a ruling on the merits." *Id.*

MPH's former counsel argues the demurrer was "procedural" because fraud "had not been pleaded with the requisite particularity." (Dkt. No. 30-2, Declaration of Duy Thai in Opposition to Motion to Compel, ¶ 2.) However, MPH asked that the Superior Court dismiss the fraud claim with prejudice. (Notice of Removal, Ex. B at ECF pp. 85-95 (Demurrer at 2:14, 3:20-22, 10:14-15).) The Court concludes filing the demurrer was an act that was inconsistent with the right to arbitrate. In July 2023, MPH filed a case management conference statement selecting mediation as the preferred form of ADR (Notice of Removal, Ex. B at ECF pp. 132-137 (Case Management Statement at 3).)

Further, the arbitration clause permits the parties to avoid waiver, if they seek "equitable, non-monetary relief at any time" in court. (MPH DPA § 7.4.) MPH did not limit its counterclaims to equitable or non-monetary relief and asked for damages and other monetary relief. (Notice of Removal, Ex. A at ECF pp. 5-17 (Answer and Cross-Complaint ¶¶ 40-41, 52-53, 57, 64, Prayer for Relief, ¶¶ C-D).)

Finally, in January 2024, MPH advised this Court that it "may" file a motion to compel. (Dkt. No. 24, Joint Case Management Conference Statement at 2:17-21.) In light of when MPH learned of its right to arbitrate, MPH's statements in pleadings and the case management conference statement do not clearly indicate an intent to arbitrate. *See, e.g., Armstrong*, 59 F.4th

7

1   at 1016 (concluding party did not waive right to arbitrate where it never waffled about whether to

2   arbitrate or stay in court).

3         Looking at the totality of the circumstances, the Court concludes SC has met its burden to

4   show that MPH waived its right to arbitrate and DENIES the motion to compel arbitration.

**B.   The Court Grants, in Part, and Denies, in Part, the Motion to Dismiss.**

6         SC moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), which requires the

7   Court to consider well pleaded allegations as true and construe them in the light most favorable to

8   MPH. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007).[7]  The Court is not required

9   to "accept as true allegations that contradict matters properly subject to judicial notice or by

10  exhibit. … Nor is the court required to accept as true allegations that are merely conclusory,

11  unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,*

12  266 F.3d 979, 988 (9th Cir. 2001).

**1.   Direct Copyright Infringement.**

14  It is undisputed that MPH sufficiently alleges it owned copyrights.  However, only two of

15  those registrations pertain to source code, and the Court GRANTS, IN PART, SC's motion to

16  dismiss claims based on copyright registrations TX 9-299-087 and TX-300-357.

17        In order to show that SC copied original elements of copyrighted works, MPH may allege

18  facts showing access to the work and substantial similarity between works. *See, e.g., Sid & Marty*

19  *Krofft Telev. Prods., Inc. v. McDonalds Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1982).  Because

20  MPH also alleges it granted MPH a license, it must allege that SC exceeded the scope of that

21  license. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939-40 (9th Cir. 2010).

22  MPH alleges, on information and belief, that SC

> has used the Copyrighted Software in a manner that exceeds the
> license MPH granted to [SC], including by continuing to use MPH's
> software despite failing to pay license fees, making use of

---

[7]   MPH submits a further declaration from Michael Hogan to support its opposition.  (Dkt. No. 37-1.)  SC moves to strike that document on the basis that it is improper to consider the facts to which he attests on a motion to dismiss.  The Court SUSTAINS the objection and STRIKES the declaration.

8

> unauthorized copies of the Copyrighted Software, and publishing unauthorized derivatives of MPH's software that contain or made use of software code copied from, or substantially similar to, protectable elements and expressions in the Copyrighted Software.
> …
>
> [SC] copied and gained unauthorized access to copies of MPH's copyrighted source code, and used that source code in making and developing [SC's] Derivative Applications, including but not limited to the 'RMH Los Angeles" application that [SC] published on January 13, 2024, on Google Play, which utilized software code copied from, or substantially similar to, MPH's Copyrighted Software.

(Counterclaims ¶¶ 34-35.)

MPH alleges that SC copied its source code, which it contends was not included in the parties' license. SC argues that the terms of the MPH DPA contradict MPH's allegation that SC exceeded the scope of the license. Neither the terms of the MPH DPA nor Exhibit A, which defines the "Products", expressly refer to source code. Further, SC has alleged that "MPH … constantly worked to fix software bugs, make critical updates, … and revise and improve the software code[.]" (Compl. ¶ 25.) In the face of those allegations, the Court is not persuaded that the only plausible interpretation of the MPH DPA is that source code was included in the "Products." *See, e.g., Asset Mgmt. Systs., Inc. v. Gagnon*, 542 F.3d 748, 755 n.5 (9th Cir. 2008) (distinguishing "source code" from "object code" and noting, in general, "when software is distributed, only the compiled object code is distributed and the programmer retains the source code"). MPH alleges it neither agreed to nor did deliver source code to SC. Because the terms of the MPH DPA do not expressly contradict that allegation, the Court concludes that MPH has not pleaded itself out of a claim.[8]

MPH now alleges that SC used MPH source code to develop the RMH Los Angeles application. MPH also an exhibit that it alleges details similarities between applications developed by MPH and applications SC has developed using MPH source code. (Counterclaims ¶

---

[8] In its reply, SC argues that it has always had possession of the source code, which "reside[s] in a Bitbucket account under SC's name, using SC email addresses and paid for entirely by SC." (Reply at 7 n.5.) SC does not support this attorney argument with facts or by citing to allegations in its Complaint. Thus, the Court cannot consider them.

29; *see also id.* ¶¶ 30, 35.) It also alleges that SC gained access to the source code by hiring away MPH employees. These allegations are similar to the allegations that the court in *Brocade Communications v. A10 Networks, Inc.* found to be sufficient to state a claim. No. 10-cv-3428-LHK, 2011 WL 10444899, at *8 (N.D. Cal. Mar. 23, 2011).

Accordingly, the Court DENIES, IN PART, SC's motion. MPH's claims for direct infringement premised on registration numbers TX 9-300-357 and TX 9-303-150 may proceed.

### 2. Contributory Infringement.

In order to state a claim for contributory infringement, MPH must allege that Support Community knew of "(1) a third party's infringing activity, and (2) induce[d], cause[d] or materially contribute[d] to the infringing conduct." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) (internal quotation marks omitted). The Court previously dismissed this claim, in part, because MPH failed to state a claim for direct infringement. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001). MPH has cured that deficiency.

Support Community renews its argument that MPH fails to state a claim for contributory infringement because its allegations are based on conduct that took place in the Philippines. "In general, United States copyright laws do not have extraterritorial effect." *Peter Starr v. Twin Continental Films*, 783 F.2d 1440, 1442 (9th Cir. 1986); *accord Los Angeles News Serv. v. Reuters Television Int'l Ltd.*, 149 F.3d 987, 990 (9th Cir. 1998). MPH failed to address that argument, and the Court construes that failure as a concession. Accordingly, the Court GRANTS SC's motion to dismiss the claim for contributory infringement, without leave to amend.

### 3. Misappropriation of Trade Secrets.

In addition to its source code, MPH alleges

> that one of its most valuable business assets, and the source of MPH's critical competitive advantages, was MPH's business relationship with a team of software developers and engineers located in the Philippines – a relationship which MPH developed through close personal and professional connections in the Philippines. … Information about the identity, recruitment, selection, training, and supervision of this staff, as well as the methods, processes, and procedures for effectively working across two different cultures, is considered highly sensitive and proprietary

10

information that MPH zealously guards.

(Counterclaims ¶¶ 18-19.)

SC argues these allegations are insufficient to state a claim for trade secret misappropriation. MPH argues that paragraphs 18 and 19 and Exhibit 2 "detail how it protects and zealously guards that information." (Opp. Br. at 11:16-17.) Exhibit 2 includes information about what MPH does to ensure employees do not disclose information that it would consider to be a trade secret. However, the Court concludes the allegations – including the information in Exhibit 2 - remain insufficient to show how MPH zealously guards information pertaining to "the methods, processes, and procedures for effectively working across two different cultures." (Counterclaims ¶ 19.)

Accordingly, the Court GRANTS SC's motion to dismiss this aspect of MPH's claim for misappropriation of trade secrets, without further leave to amend. The misappropriation of trade secrets claim will be limited to MPH's claim that SC misappropriated its source code.

## CONCLUSION

For the reasons set forth herein, the Court DENIES MPH's motion to compel arbitration and GRANTS, IN PART, AND DENIES, IN PART, SC's motion to dismiss. SC shall answer MPH's amended counterclaims by May 17, 2024. The Court ORDERS the parties to appear for an initial case management conference on June 14, 2024 at 11:00 a.m., and they shall file a joint case management conference statement on or before June 7, 2024.

**IT IS SO ORDERED**.

Dated: May 2, 2024

_____
JEFFREY S. WHITE
United States District Judge