Jack Russo (Cal. Bar No. 96068)
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301
(650) 327-9800 (office)
jrusso@computerlaw.com

Attorneys for Defendant
and Counterclaimant
MPH International LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **SUPPORT COMMUNITY, INC.**, a Delaware Corporation,<br><br>Plaintiff;<br><br>v.<br><br>**MPH INTERNATIONAL LLC,** a Nevada Limited Liability Company, DOES 1 through 25, inclusive,<br><br>Defendant;<br><br>---<br><br>**MPH INTERNATIONAL LLC,** a Nevada Limited Liability Company,<br><br>Counterclaimant,<br><br>v.<br><br>**SUPPORT COMMUNITY, INC.,** a Delaware Corporation,  inclusive,<br><br>Counter-Defendant. | Case No. 23-CIV-04911-JSW<br><br>**CORRECTED NOTICE OF MOTION AND MOTION FOR EVIDENTIARY SANCTIONS AND FOR SUMMARY JUDGMENT UNDER FRCP FEDERAL RULE 56 [CORRECTION OF DOCKET #62]**<br><br>Date:        August 22, 2025<br>Time:        9:00 AM<br>Courtroom:    5<br>Before the Hon. Jeffrey S. White<br><br>Trial Date:    None Set |

Computerlaw Group LLP
www.computerlaw.com℠

Dft's Corrected Motion for Summary Judgment                    Case No.23-CIV-04911-JSW

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 2

PROCEDURAL HISTORY ................................................................. 4

FACTUAL BACKGROUND ............................................................... 4

    A. FORMATION OF CONTRACTUAL RELATIONSHIP (2016) ............................. 4
    B. MPH'S SUBSTANTIAL CONCESSIONS (2017-2022) ......................... 4
    C. TERMINATION AND LAWSUIT (2022-2023) .................................... 5

UNDISPUTED MATERIAL FACTS................................................................... 6

LEGAL STANDARD ........................................................................... 7

ARGUMENT........................................................................................ 8

    I.     THE FRAUD CLAIM IS TIME-BARRED AS A MATTER OF LAW........ 8

        A. California's Three-Year Statute Bars SCI's Fraud Claim……………………..8
.

        B. The Agreement's Six-Month Contractual Limitations Period Independently Bars the SCI "Fraud" Claim As a Matter of Law……………………..……….10

        C. The Agreement's 30-Day Acceptance Period Provides, As a Matter of Law, a Further and Third Independent bar to SCI's Fraud Claim; SCI Delivered No Objections Here…………………………………………………..……….11

        D. The Delayed Discovery Rule Cannot Salvage the Fraud Claim…………..…12

        E. SCI Cannot Rely on "Continuous Accrual" to Salvage Its Claims Either...…14

        F. Conclusion: SCI's Fraud Claim is Barred, As a Matter of Law, Under Three Independent Limitations Periods; SCI Cannot Avoid the Fact of Its Long Delay…………………………………………………...……………..15

    II.    THE BREACH OF CONTRACT CLAIMS ARE ALSO TIME-BARRED . …………………………………………………..15

        A. SCI's Breach of Written Contract Claims Are Barred, As a Matter of Law, by California's Four-Year Statute of Limitations……………………………15

        B. Alleged Breaches During the Limitations Period Are Independently Barred by the 30-Day Acceptance Provision As a Matter of Law; No Rejections/No Revocations Occurred…………………………………………….17

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

Dft's Corrected Motion for Summary Judgment      i      Case No.23-CIV-04911-JSW

C. Additionally, as a Matter of Law, the Six-Month Contractual Limitations Period Further Bars All Breach of Contract Claims Because No Claim Was Timely Made……………………………………………………….……...17

D. The Breach of Oral "Agreement II" Claims Are Also Barred by Limitations……………………………………………………………...18

E. Undisputed Evidence Confirms SCI Had Knowledge of Any Alleged Oral Agreement Breach Long Before the Limitations Period and Never Objected At All and Did Not File……………………………………...……………19

F. The Contractual Six-Month Period is Also a Contractual Time Bar…...……20

G. The Statute of Frauds Bars Any Alleged Oral Agreement; None Can Exist Here………………………………...……….…………………20

H. SCI's Own Communications Confirm Only One Written Agreement Here...21

III. THE AGREEMENT'S NOTICE PROVISION PROVIDES A FURTHER INDEPENDENT BAR ................................................................................. 21

IV. SCI'S TORT CLAIMS MERELY RESTATE CONTRACT-BASED GRIEVANCES AND ARE BARRED AS A MATTER OF LAW AS WELL ...................................................................................................23

CONCLUSION..................................................................................................24

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

**TABLE OF AUTHORITIES**

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................................ 7

Angeles Chem. Co. v. Spencer & Jones, 44 Cal. App. 4th 112 (1996) ...................................... 19

April Enterprises, Inc. v. KTTV, 147 Cal. App. 3d 805 (1983) .................................................. 16

Artificial Intelligence Corp. v. Casey, 1 Cal. App. 4th 22 (1991) ....................................... 12, 17

Aryeh v. Canon Bus. Sols., Inc., 55 Cal. 4th 1185 (2013) ......................................................... 14

Brobeck, Phleger & Harrison v. Telex Corp., 602 F.2d 866 (9th Cir. 1979) ............................. 22

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................................ 7

Charnay v. Cobert, 145 Cal. App. 4th 170 (2006) ..................................................................... 10

Cole v. CRST Expedited, 289 F.3d 840 (6th Cir. 2002) .............................................................. 8

Cornwell v. Bank of Am. Nat'l Tr. & Sav. Ass'n, 224 Cal. App. 3d 995 (1990) ........................ 22

Creditors Collection Serv. of Sacramento v. Castegnaro,

    17 F. Supp. 2d 1079 (N.D. Cal. 1998)………………………………………………….. 19

Danjaq LLC v. Sony Corp., 263 F.3d 942 (9th Cir. 2001) ......................................................... 14

Dillon v. Bd. of Pension Comm'rs, 18 Cal. 2d 427 (1941) ......................................................... 17

Ellis v. U.S. Sec. Assocs., 224 Cal. App. 4th 1213 (2014) ......................................................... 10

FNB Mortgage Corp. v. Pacific General Group, 76 Cal. App. 4th 1116 (1999) ........................ 17

Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797 (2005) ................................................... 9, 12

Grisham v. Philip Morris U.S.A., Inc., 40 Cal. 4th 623 (2007) ................................................. 13

Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc., 38 F.3d 1118 (9th Cir. 1994) ..... 18

Han v. Mobil Oil Corp., 73 F.3d 872 (9th Cir. 1995) ........................................................... 10, 20

Intel Corp. v. VIA Techs., Inc., 319 F.3d 1357 (Fed. Cir. 2003) ............................................... 11

Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103 (1988) ....................................................................... 10

*Computerlaw Group LLP*
www.computerlaw.com[sm]

Lewis v. YouTube, LLC, 197 Cal. App. 4th 1387 (2011) ........................................................ 18

Lowy Dev. Corp. v. Superior Court, 190 Cal. App. 3d 317 (1987) ............................................ 12

Magic Carpet Ride LLC v. Rugger Inv. Grp. L.L.C., 41 Cal. App. 5th 357 (2019) ................... 22

Masterson v. Sine, 68 Cal. 2d 222 (1968) ................................................................................. 21

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) .................................. 7

Menominee Indian Tribe of Wis. v. United States, 614 F.3d 519 (9th Cir. 2010) ...................... 16

Miller v. Bechtel Corp., 33 Cal. 3d 868 (1983) ......................................................................... 13

Moreno v. Sanchez, 106 Cal. App. 4th 1415 (2003) ............................................................ 10, 17

MWS Wire Indus., Inc. v. Cal. Fine Wire Co., 797 F.2d 799 (9th Cir. 1986) ............................ 17

Nevro Corp. v. Bos. Sci. Corp., 312 F. Supp. 3d 726 (N.D. Cal. 2018) ..................................... 21

New England Country Foods, LLC v. VanLaw Food Products, Inc.,

17 Cal. 5th 703 (2025) ..................................................................................... 3, 11, 23

Oracle America, Inc. v. Hewlett Packard Enterprise Co.,

971 F. Supp. 2d 975 (N.D. Cal. 2013) .......................................................................... 16

Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151 (9th Cir. 1996)............................ 21

Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049 (9th Cir. 2008) ………...... 8, 9, 14, 19

Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979 (2004) .............................................. 24

Romano v. Rockwell Int'l, Inc., 14 Cal. 4th 479 (1996) ........................................................... 15

Seelenfreund v. Terminix of Northern Cal., Inc., 84 Cal. App. 3d 133 (1978) .......................... 19

Synopsys, Inc. v. ATopTech, Inc., 2015 WL 1197693 (N.D. Cal. 2015) ................................... 16

Tolan v. Cotton, 572 U.S. 650 (2014) ........................................................................................ 7

VP & W, Inc. v. Galardi, 2015 WL 5321245 (E.D. Cal. 2015) ................................................. 12

WA Sw. 2, LLC v. First Am. Title Ins. Co., 240 Cal. App. 4th 148 (2015) ................................. 9

Wind Dancer Prod. Grp. v. Walt Disney Pictures, 10 Cal. App. 5th 56 (2017) .................... 12, 17

**Computerlaw Group LLP**
www.computerlaw.com℠

Yeti v Molly, 259 F.3d 1101 (9th Cir. 2001) ................................................................... 8

**Statutes and Rules**

Cal. Code Civ. Proc. § 337 ......................................................................... 15, 22

Cal. Code Civ. Proc. § 338(d) ................................................................. 8, 10, 15

Cal. Code Civ. Proc. § 339 ..................................................................... 18, 19, 22

Cal. UCC § 2-719 ........................................................................................... 3

Fed. R. Civ. P. 26 .......................................................................................... 7

Fed. R. Civ. P. 26(a)(1) ................................................................................. 7

Fed. R. Civ. P. 37 ..................................................................................... 1, 7

Fed. R. Civ. P. 37(c)(1) ................................................................................. 7

Fed. R. Civ. P. 56 ..................................................................................... 1, 7

Fed. R. Civ. P. 56(a) ..................................................................................... 7

**Other Authorities**

Cal. Civ. Code § 1668 ................................................................................. 23

West's Ann. Cal. C.C.P. § 339 ................................................................. 18

Computerlaw Group LLP
www.computerlaw.com[sm]

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 22, 2025 at 9:00 AM, or as soon thereafter as the matter may be heard, in Courtroom 5 of the above-entitled court, located at 1301 Clay Street, Oakland CA 94612, Defendant MPH International LLC ("MPH") will and hereby does move for summary judgment pursuant to Federal Rule of Civil Procedure Rules 37 and 56 in favor of Defendant and against Plaintiff Support Community, Inc. ("SCI" or "Plaintiff") on all causes of action asserted in Plaintiff's Complaint.

This Motion is made on the grounds that there are no genuine issues of material fact as to these claims, including that they are barred by contractual and statutory statutes of limitations, and Defendants are entitled to judgment as a matter of law.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Michael Patrick Hogan, Jon Indick, and Jack Russo, as well as all exhibits thereto, the pleadings and papers on file in this action, including this Court's prior rulings affirmed by the Ninth Circuit Court of Appeal (and that are now law of the case), and such evidence or argument as may be presented at the hearing.

**Computerlaw Group LLP**
www.computerlaw.com[sm]

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The written December 2, 2016 Agreement ("the 2016 Agreement") negotiated, executed and ratified between these two corporate commercial parties expressly forecloses any claim of fraud or misrepresentation and waives any and all consequential or other indirect damages, and also limits any direct damages (none of which are disclosed in the Plaintiff's "Initial Disclosures"). See 2016 Agreement at Paragraphs 5.2 & 5.4. And most importantly, any such claims are barred by statutory and contractual limitations, as outlined below.

After six years of harmonious business under the 2016 Agreement, SCI's claims rest on fabrications—a fictitious "Agreement II"—and a fraud claim alleging a "phantom QA" that was actually a $1,300/month discount for an engineer, saving SCI $55,900 from May 2018 to October 2022. Declaration of Mike Hogan in support of MPH's Motion for Summary Judgment, CEO of MPH at ¶ 6, Ex. N ("Hogan Decl."). The 2016 Agreement controls; it is the only existing contract that the parties operated under for six years. It only granted SCI a license to "Products" and it makes no mention of any license or use of source code and no statement of any rights to modify, adapt or otherwise generate derivative works—rights SCI falsely claims and for which there is not a single item of evidence in any of the procedurally and substantively defective "Initial Disclosures" submitted by Plaintiff. Declaration of Jack Russo in support of MPH's Motion for Summary Judgment ("Russo Decl.") at ¶¶ 3-7.

The reasons why the 2016 Agreement bars Plaintiff's claims are clear.

**First**, the 2016 Agreement is a fully integrated, final agreement containing a merger/no-reliance clause, and its terms have an express 6-month limitations period. Per Section 7.5:

> This Agreement constitutes the entire understanding between the parties with respect to its subject matter **and supersedes all prior or contemporaneous** communications, proposals, representations, understandings and agreements**, whether oral or written.**

Agreement, § 7.5 (emphasis added).

Thus, any allegedly false representations are either expressly in the writing or directly contradicted by it, and Plaintiff cannot have reasonably relied on any prior or contemporaneous

Computerlaw Group LLP
www.computerlaw.com℠

statements and cannot unilaterally assert that further language should now be added to an Agreement that both parties operated under harmoniously for six years (from 12/2016-11/2022).

**Second**, the 2016 Agreement has an express 30-day acceptance period requiring timely written objections (and none occurred), and it unequivocally disclaims all consequential and indirect damages.  Per Section 1.2:

> Upon delivery of each deliverable by MPH, **Customer shall have 30-days to accept or reject the deliverable and pay the associated fee.** In rejecting any deliverable, Customer shall provide a detailed description of why the deliverable was rejected, such that MPH may resolve the issues detailed, in order to achieve acceptance of the deliverable. **Any deliverable not accepted or rejected within the 30-day period shall be deemed accepted**.

Agreement, § 1.2 (emphasis added).

The contract expressly excludes such rights, and SCI's claims—based a fictional "Agreement II" and mischaracterized concessions—lack admissible evidence. The parties, both sophisticated merchants negotiated that waiver, and it is enforceable under both California statutory law (California UCC §2-719) and under California case law, including the very recently decided California Supreme Court case, *New England Country Foods, LLC v. VanLaw Food Products, Inc.*, 17 Cal. 5th 703 (2025).

Per Section 5.2:

> **MPH's maximum aggregate liability with respect to this Agreement** whether under theory of contract, tort (including negligence), strict liability or otherwise **shall be limited to the aggregate amount of payments made by Customer to MPH during the six-month period prior to the claim.** (emphasis added).

Plaintiff never challenged the above six-month limitations period, nor the 30-day acceptance period nor the express damage limitations and express waivers before suit and does not challenge them in this lawsuit either; nothing in SCI's "Initial Disclosures" provides any evidence to the contrary.  In short, the claims of fraud, oral and written contract breach are barred by the applicable contractual and other statutes of limitations under settled law.

**Third**, for any remaining claims, the 2016 Agreement places clear calculable limits on direct damages and certainly far less than any number in the Initial Disclosures (none of which sets forth any actual detail and without any underlying factual or legal basis). In short, every cause of action here is barred or limited by unambiguous contractual provisions. Summary judgment and/or summary adjudication are therefore warranted—indeed necessary—to protect Defendant (a small business) from costly, baseless litigation.

## PROCEDURAL HISTORY

After some six years of a harmonious business relationship, SCI filed suit on January 12, 2023, breaching the 2016 Agreement's express arbitration clause. Russo Decl. ¶¶ 2, 4–8. MPH removed it to this Court (Dkt. No. 1). This Court's May 2, 2024 order (Dkt. No. 41) conclusively resolved the arbitration issues including the existence of the Agreement and the Ninth Circuit affirmed all rulings. (Dkt. No. 41 at 4-11).

## FACTUAL BACKGROUND

### A. Formation of Contractual Relationship (2016)

On December 2, 2016, CEO Mike Hogan met CEO Patrick Morrison met to discuss an idea about improving the Ronald McDonald House near Stanford University, where Morrison shared his vision for a software application to support the Ronald McDonald House community. By the end of the December 2, 2016 meeting, Morrison and Hogan reviewed and signed the 2016 Agreement at Hogan's home in San Mateo County, California. The Agreement, reviewed during that December 2, 2016 in-person meeting and ratified and confirmed by emails and texts, granted SCI only a license to use the "Products" (executable applications). Hogan Decl. ¶ 2 & Exhibit B, C.

### B. MPH's Substantial Concessions (2017-2022)

Over the next six years, MPH offered substantial concessions throughout the parties' commercial relationship as set forth in the Hogan Decl. ¶¶ 1 to 7:

- **Discounted Fees**: MPH's $280,000 bid was less than a third of a competitor's. (¶1, Ex. A)
- **Management Fee Waiver**: Delayed a $5,000 monthly management fee ($60,000/year), which was deferred and not later billed nor collected. (¶5, Ex. M)

- **Engineer Discount**: When QA Engineer Christopher Rosales became a Software Engineer, MPH continued billing at the lower QA rate, saving SCI $1,300/month ($55,900 total). (¶6, Ex. N)

- **Mobile App Discount**: On April 3, 2019, MPH provided three Software Engineers and a Technical Designer at an 80% discount, saving SCI $425,318 through 2022. (¶6(b), Ex. Q)

- **Convertible Debt**: In March 2020, MPH agreed to defer $4,300 monthly payments, documented as convertible debt toward equity, totaling $137,600 by October 2022. (¶8, Ex. AQ)

- **Unpaid Services**: Both Mike Hogan and Jon Indick worked unpaid at SCI trade shows, covering expenses while MPH designers created marketing materials at no charge. (¶7(a), Ex. O)

### C. Termination and Lawsuit (2022-2023)

In November 2022, while Hogan was recovering from prostate surgery and mourning family deaths, Morrison poached eight of MPH's nine software engineers. On November 23, 2022, SCI terminated the Agreement. MPH invoiced SCI $75,683 for November 2022 work, which with all the above monies remains entirely unpaid and unaddressed. Hogan Decl. ¶¶ 8-10 & Exhibits X & Y.

On January 12, 2023, over six years after the start of the relationship and over four years after any contract breach could be claimed, Plaintiff SCI sued in the San Mateo Superior Court, alleging "fraudulent" breaches and claiming rights to source code and additional license rights to adapt, modify, and create derivative works—rights never granted by the 2016 Agreement. The lawsuit also alleges an unspecified "Agreement II" but with no underlying evidentiary basis disclosed in either the pleading or in SCI's Rule 26 Initial Disclosures. The lawsuit followed SCI's raiding and misappropriating nearly the entire software team of employees that MPH had assembled, supervised, and managed over the six-year period and which SCI implemented without permission and without notice. Hogan Decl., ¶ 11.

In effect, what played out is this: SCI decided to save money by cutting out MPH by directly hiring nearly the entire MPH team and did so without any advance notice to MPH, without

Computerlaw Group LLP
www.computerlaw.com^sm

paying anything for it, and without ever resolving outstanding financial issues that existed with MPH. Hogan Decl., ¶¶ 10-11; Russo Decl. ¶ 7 & Exhibit D-E (questions never answered).

### Undisputed Material Facts Supporting Summary Judgment

1. MPH and SCI entered into the 2016 Agreement, a written agreement for the delivery of the "Product," which was a set of software deliverables (Hogan Decl., ¶ 4; Exhibit A, § 2.2); the 2016 Agreement includes an express integration clause ratified by and never disputed by SCI. Hogan Decl., ¶ 4 & Exhibit A

2. MPH provided (and Plaintiff SCI never objected to) various versions of the Product in executable form to SCI as stipulated in the Agreement, including work performed by the MPH software developers without controversy about MPH's sole ownership over the six-year period (2016-2022) Hogan Decl. ¶¶ 3-6. Declaration of Jonathan Indick in support of MPH's Motion for Summary Judgment ("Indick Decl."), ¶¶ 3-4

3. SCI received and accepted each of the Product deliverables electronically without objection, utilizing the Product and each delivered version over the 6-year period. Hogan Decl. ¶ 3; Indick Decl. ¶¶ 2-4.

4. MPH issued final invoices to SCI totaling over $75,000 under the 2016 Agreement which SCI has not paid. Nor is there anything in SCI's Initial Disclosures which explains the SCI decision to not pay this final invoice. Hogan Decl. ¶ 13 & Exhibit AE.

5. SCI also agreed to defer payment of certain billings amounting to $137,600, to be converted into convertible debt, which remains unpaid. This too is not contested and nothing in SCI's Initial Disclosures explains how these monies can be ignored. Hogan Decl. ¶ 8, Ex. AQ.

6. SCI benefited from billing errors that resulted in discounts and reduced rates, including three years of discounts on five developers and one designer, and one developer billed as a Quality Engineer, leading to a savings of $1,300 per month. Hogan Decl., ¶¶ 5-9 & Exhibit N & Q.

7. MPH timely served its Initial Disclosures, identifying individuals likely to have discoverable information, documents supporting its claims, and a computation of damages. Hogan Decl., ¶ 15 & Exhibit AK; Russo Decl., ¶ 3.

Computerlaw Group LLP
www.computerlaw.com sm

8. SCI failed to provide proper Initial Disclosures as required by Rule 26(a)(1) of the Federal Rules of Civil Procedure, despite multiple requests and ample time to comply. Russo Decl. ¶¶ 4–7. All factual assertions are supported by sworn declarations (Hogan Decl. ¶¶ 5-9; Indick Decl. ¶¶ 3-4) and authenticated business records (Exh. A-AI).

## **LEGAL STANDARD**

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The non-moving party must present specific facts showing a genuine issue for trial, not mere allegations or denials. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). The Court must draw all reasonable inferences in favor of the non-moving party (*Tolan v. Cotton*, 572 U.S. 650, 657 (2014)), but unsupported speculation or conclusory allegations are insufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

In addition, summary judgment is warranted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to its case." *Celotex,* 477 U.S. at 323.. SCI bears the burden to identify triable issues (*Anderson*, 477 U.S. at 250) yet its But SCI's Initial Disclosures' lack evidence supporting its claims.

Federal Rule 37(c)(1) establishes an automatic sanction for disclosure violations absent a specific court finding of "substantial justification" or "harmlessness." The burden rests entirely on the non-compliant party (here SCI) to demonstrate either exception. The lack of justification for the delay—absent evidence of technical difficulties, unforeseen circumstances, or good-faith oversight—further undermines any claim of "substantial justification." None of this can be so, given SCI's repeated assertions of wanting to move the case forward promptly and representations that they have been delayed. Russo Decl., ¶¶ 4-5

Given the automatic nature of Rule 37(c)(1) sanctions and the absence of harm-mitigating factors, all evidence and arguments reliant on undisclosed information must be precluded from consideration in this motion for summary judgment. This includes any witnesses, documents, or damages calculations not identified in SCI's Initial Disclosures. How can it be otherwise when SCI

**Computerlaw Group LLP**
www.computerlaw.com℠

claims justification for filing suit instead of timely going to arbitration? Courts have consistently enforced Rule 26 enforcement through Rule 37 remedies to uphold the integrity of disclosure obligations and prevent unfair tactical advantages. In this case, SCI decided to obtain an unfair tactical advantage by first getting MPH's Initial Disclosures, by ignoring multiple notices to timely provide SCI's Initial Disclosures, and then by providing a collection of boilerplate text with no actual disclosure of evidence. Russo Decl., ¶¶ 5-6 & Exhibit B-C and Hogan Decl. ¶ 15 & Exhibits AK - AL. Rule 37(c)(1) "gives teeth" to disclosure obligations by mandating preclusion absent justification. *Yeti v Molly*, 259 F.3d 1101, 1106 (9th Cir. 2001). This includes precluding damages theories or calculations not provided in the Initial Disclosures. *Cole v. CRST Expedited*, 289 F.3d 840, 846 (6th Cir. 2002). SCI's Initial Disclosure failed to disclose its damages theories or calculations.

<div align="center">

**ARGUMENT**

</div>

**I.      THE FRAUD CLAIM IS TIME-BARRED AS A MATTER OF LAW.**

**A. California's Three-Year Statute Bars SCI's Fraud Claim.**

SCI's fraud claim is barred by California's three-year statute of limitations for fraud actions. California Code of Civil Procedure § 338(d) establishes a three-year limitations period for "[a]n action for relief on the ground of fraud or mistake," which "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." This discovery rule does not indefinitely extend the limitations period but merely delays accrual until the plaintiff has actual or constructive knowledge of the facts giving rise to the claim. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008).

The undisputed evidence demonstrates that SCI had actual or constructive knowledge of the alleged "fraudulent" billing practices by December 2019 at the latest, more than three years before filing suit on January 12, 2023. SCI's allegations center on purportedly "fraudulent" invoices and misrepresentation of employee salaries (Hogan Decl. ¶ 11c, Ex. AA). However, SCI had complete access to and regular communication with MPH's Philippine engineering team throughout the parties' relationship (Hogan Decl. ¶ 11c, Ex. Q). These communications provided SCI with information about the team's composition, work allocation, and overall operations.

Computerlaw Group LLP
www.computerlaw.com^sm

The Ninth Circuit has recognized that when a plaintiff has "reason to suspect" the factual basis of a claim, the limitations period begins to run. *Platt Elec. Supply*, 522 F.3d at 1054. Even assuming the allegations were true (and they are not), SCI cannot credibly claim it lacked knowledge because it:

1. Directly interacted with MPH's engineering team on a regular basis (Hogan Decl. ¶ 11c, Ex. Q);

2. Approved and paid invoices for six years without objection (Hogan Decl. ¶ 3, Ex. E);

3. Had information about team composition/work allocations (Hogan Decl. ¶ 11c, Ex. Q);

4. Maintained oversight of development progress/deliverables (Hogan Decl. ¶ 3, Ex. E);

5. By December 2019, had received and approved over three years of invoices, establishing a pattern that SCI should have questioned if it believed "fraud" was occurring (Hogan Decl. ¶¶ 3, 6, 11c; Ex. E, N, Q).

In *WA Sw. 2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 157 (2015), the California Court of Appeal held that "a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts showing (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." SCI has failed to plead such facts, and indeed, cannot prove them given the extensive interaction it had with MPH's team.

SCI's claims about "Phantom QA" and "UX Designer" positions (which actually reflected discounted rates, see Hogan Decl. ¶¶ 6, 9; Ex. N, Q) could and should have been discovered through reasonable diligence long before January 12, 2020 (three years before filing suit). By December 2019, SCI had received and reviewed dozens of invoices containing the allegedly "fraudulent" information, yet continued to approve and pay them without objection (Hogan Decl. ¶¶ 3, 6, 11c; Ex. E, N, Q). As the California Supreme Court recognized in *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005), the discovery rule "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action."

Applying California law, the Ninth Circuit has further clarified that "[i]t is the discovery of facts, not their legal significance, that starts the statute of limitations." *Platt Elec. Supply*, 522

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

F.3d at 1054 (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1113 (1988)). Even accepting SCI's allegations as true, SCI had all the necessary facts to discover the alleged "fraud" before 2020, triggering the 3-year limitations period. Because SCI did not file until January 12, 2023, more than 3 years later, its fraud claim is time-barred. CCP § 338(d).

**B. The Agreement's Six-Month Contractual Limitations Period Independently Bars the SCI "Fraud" Claim As a Matter of Law.**

Beyond the statutory limitations period, SCI's fraud claim is independently barred by the six-month contractual limitations period in Section 5.2 of the Agreement. (Hogan Decl. ¶ 2; Ex. A, § 5.2).

California courts consistently uphold contractual limitations provisions that shorten statutory periods when reasonable. *Ellis v. U.S. Sec. Assocs.*, 224 Cal. App. 4th 1213, 1223 (2014) (enforcing six-month limitations period); *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003) (recognizing validity of contractual limitations periods). Six-month limitations periods have been repeatedly upheld as reasonable in California. *See, e.g., Charnay v. Cobert*, 145 Cal. App. 4th 170, 183 (2006); *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995) (applying California law). SCI's fraud claim unquestionably is within the scope of "**whether under theory of contract, tort (including negligence), strict liability or otherwise**" as it directly challenges the propriety of MPH's billing practices under the Agreement (Hogan Decl. ¶ 11c; Ex. A, § 5.2; Ex. AA). Even applying the discovery rule to the contractual limitations period, as California courts sometimes do (see *Moreno*, 106 Cal. App. 4th at 1430), SCI's claim is still barred. SCI alleges fraudulent billing practices for services rendered throughout the parties' six-year relationship. Yet SCI waited until January 12, 2023 to file suit—well beyond six months from when SCI knew or should have known of any alleged "fraud."

The Ninth Circuit, when applying California law, has upheld contractual limitations periods even for fraud claims. In *Han*, the court concluded that "California generally permits contracting parties to agree upon a shorter limitations period for bringing an action than that prescribed by statute, so long as the time allowed is reasonable." 73 F.3d at 877. There, as here, the six-month

Computerlaw Group LLP
www.computerlaw.com℠

period was deemed reasonable.  See also *New England Country Foods, LLC v. VanLaw Food Products, Inc.*, 2025 WL 1190980 (Cal., 2025).

The Agreement's six-month limitations provision (especially when read in connection with the arbitration clause for monetary claims) is particularly reasonable given the nature of software development services, where prompt attention to billing issues is essential for accurate recordkeeping and fair resolution of disputes. The contractual period gave SCI ample time to discover and assert any claims of "fraudulent" billing or other billing issues. SCI's failure to raise its claims within the contractually stipulated period bars those claims under California law.

**C. The Agreement's 30-Day Acceptance Period Provides, As a Matter of Law, a Further and Third Independent Bar to SCI's Fraud Claim; SCI Delivered No Objections Here.**

In addition to the statutory and contractual limitations periods, SCI's fraud claim is further barred by Section 1.2 of the Agreement, which establishes a 30-day period for objecting to deliverables. Section 1.2 states:

> **Each Deliverable shall be deemed to be accepted** by Customer if Customer does not, within thirty (30) days of delivery, **give written notice to MPH specifically identifying any issue** with the Services as not meeting the requirements of this Agreement. **If no such notice is received, Customer shall be deemed to have accepted the Deliverable.**

(Hogan Decl. ¶ 2, Ex. A, § 1.2) (emphasis added).

California courts have consistently held that contractual provisions creating deemed acceptance after a specified period are enforceable. *See Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 10 Cal. App. 5th 56, 73 (2017) (upholding contractual accounting objection period); *Artificial Intelligence Corp. v. Casey*, 1 Cal. App. 4th 22, 28 (1991) (enforcing deemed acceptance provision). The Ninth Circuit has likewise enforced similar provisions under California law. *See Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1365 (Fed. Cir. 2003) (applying California law and enforcing 30-day provision).

Each of MPH's invoices was intrinsically linked to a corresponding deliverable and represented billing for services performed to create that deliverable (Hogan Decl. ¶ 3, Ex. E). SCI's "fraud" claim challenges the propriety of these invoices, alleging fraudulent billing practices

<div style="writing-mode: vertical">**Computerlaw Group LLP**
www.computerlaw.com<sup>sm</sup></div>

**Computerlaw Group LLP**
www.computerlaw.com<sup>sm</sup>

(Hogan Decl. ¶ 11c, Ex. AA). However, SCI failed to object to any Deliverable within the required 30-day period and instead accepted all Deliverables over the course of six years (Hogan Decl. ¶ 3, Ex. E).  Indeed, SCI publicly praised the technical work of MPH. Id.

Under California law, this acceptance precludes SCI from now claiming fraud in the underlying billing. In *Lowy Dev. Corp. v. Superior Court*, 190 Cal. App. 3d 317, 324 (1987), the court held that "a party who has previously waived objections to a document or transaction may not thereafter challenge that same document or transaction on grounds of fraud." Similarly, in *VP & W, Inc. v. Galardi*, 2015 WL 5321245, at *6 (E.D. Cal. Sept. 11, 2015), the court found that explicit acceptance provisions bar subsequent fraud claims related to accepted items.

The rationale behind enforcing such provisions is particularly strong in software development contracts, where timely identification of issues is critical. As explained by the court in *Artificial Intelligence Corp.*, deemed acceptance provisions "protect against stale claims... encourage the recipient to inspect promptly and to voice any defects discovered... [and] permit the parties to investigate and attempt to resolve problems at an early date." 1 Cal. App. 4th at 28. SCI's failure to object to any deliverable within the 30-day period constitutes acceptance under Section 1.2, which precludes SCI from now claiming fraud in the related billing. This 30-day acceptance period provides a third, independent basis for barring SCI's fraud claim.

**D. The Delayed Discovery Rule Cannot Salvage the Fraud Claim.**

SCI may attempt to invoke California's delayed discovery rule to salvage its time-barred fraud claim. However, this attempt would fail because SCI cannot establish the elements necessary for delayed accrual.

Under California law, a plaintiff seeking to rely on the delayed discovery rule must specifically plead and prove: "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808. The plaintiff bears the burden of showing diligence, and "[c]onclusory allegations will not withstand demurrer." Id. SCI cannot show the "inability to have made earlier discovery despite reasonable diligence" given the undisputed facts:

1. SCI had direct and regular communication with MPH's engineering team throughout the relationship (Hogan Decl. ¶ 11c, Ex. Q);

2. SCI regularly reviewed and approved invoices containing the allegedly fraudulent billing (Hogan Decl. ¶¶ 3, 6; Ex. E, N);

3. SCI was in a position to verify team composition and work allocation through its direct contacts with the team (Hogan Decl. ¶ 11c; Ex. Q);

4. SCI possessed all necessary information to discover the alleged fraud had it exercised reasonable diligence (Hogan Decl. ¶¶ 3, 6, 11c; Ex. E, N, Q);

5. SCI has provided no explanation for its failure to discover the alleged fraud earlier despite having all necessary information (Hogan Decl. ¶ 11c; Ex. AA, AL, Pages 204–209). Nothing in the Initial Disclosures sets forth any basis for delayed discovery.

In *Platt Elec. Supply*, the Ninth Circuit emphasized that under California law, "a plaintiff is held to her actual and constructive knowledge." 522 F.3d at 1054. The court explained that constructive knowledge includes "information that would make a reasonably prudent person suspicious." *Id.* Given SCI's direct access to MPH's engineering team and review of invoices, SCI either knew of the alleged fraud (triggering the limitations period) or failed to exercise reasonable diligence (precluding reliance on the delayed discovery rule).

California courts have consistently held that when a plaintiff has the means to discover fraud through reasonable diligence, the delayed discovery rule does not apply. In *Miller v. Bechtel Corp.*, 33 Cal. 3d 868, 875 (1983), the California Supreme Court held that "plaintiff is charged with knowledge of facts which would have been disclosed by an investigation if plaintiff had a duty to investigate." SCI had such a duty given its ongoing business relationship with MPH and regular review of invoices and deliverables.

The claim that SCI somehow discovered the alleged fraud only shortly before filing suit in January 2023 is contradicted by its 6 years-long direct engagement with MPH's engineering team and approval of invoices. Under California law, this is insufficient to trigger the delayed discovery rule. *See Grisham v. Philip Morris U.S.A.*, Inc., 40 Cal. 4th 623, 638 (2007) (plaintiff must show "inability to have made earlier discovery despite reasonable diligence").

Computerlaw Group LLP
www.computerlaw.com^sm

**E. SCI Cannot Rely on "Continuous Accrual" to Salvage Its Claims Either.**

SCI may alternatively attempt to invoke the theory of continuous accrual to salvage portions of its fraud claim. This theory, however, does not apply to SCI's fraud claim because there can be no "continuous accrual" in this case given the express 30-day and 6-month periods which require written objections (and then negotiation/arbitration for timely resolution).

No written objections occurred here. California's continuous accrual theory provides that "when there are ongoing contractual obligations, a plaintiff may allege a series of breaches over time." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199 (2013). While this theory might apply to contract claims in some circumstances, it is inapplicable to fraud claims, which accrue when the plaintiff discovers or should have discovered the fraud. *Platt Elec. Supply*, 522 F.3d at 1054. Even if a continuous accrual theory could apply to fraud claims, it would not help SCI because:

1. The alleged fraud is based on a unified scheme of purportedly fraudulent billing practices (Hogan Decl. ¶ 11c, Ex. AA;), not discrete, independent fraudulent acts;

2. SCI had knowledge or reason to know of the allegedly fraudulent practices by December 2019 at the latest (Hogan Decl. ¶ 11c, Ex. Q);

3. The Agreement's six-month contractual limitations period (§ 5.2) and 30-day acceptance provision (§ 1.2) independently bar application of continuous accrual (Hogan Decl. ¶ 2, Ex. A).

In *Aryeh*, the California Supreme Court clarified that continuous accrual applies "when an obligation or liability arises on a recurring basis," creating "a series of wrongs" where "a cause of action accrues each time." 55 Cal. 4th at 1199. However, the court also emphasized that this theory is subject to "the parties' ability to alter the limitations period by contract." Id. at 1196. Here, the Agreement expressly shortens the limitations period to six months (§ 5.2) and establishes a 30-day acceptance period (§ 1.2), both of which override any application of continuous accrual.

Moreover, the Ninth Circuit, applying California law, has recognized that continuous accrual does not apply when the plaintiff has knowledge of the alleged wrongdoing. In *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001), the court held that the continuing wrong doctrine "extends the statute of limitations in cases alleging tortious behavior that began before the

Computerlaw Group LLP
www.computerlaw.com^sm

Computerlaw Group LLP
www.computerlaw.com[sm]

limitations period, but continued into the limitations period." It does not, however, extend the limitations period once the plaintiff is aware of the alleged wrongdoing.

Given SCI's knowledge of MPH's billing practices by December 2019 at the latest, the continuous accrual theory cannot revive SCI's time-barred fraud claim.

**F. Conclusion: SCI's Fraud Claim Is Barred, As a Matter of Law, Under Three Independent Limitations Periods; SCI Cannot Avoid The Fact of Its Long Delay**

In sum, SCI's fraud claim is time-barred under three independent limitations periods:

1. California's three-year statute of limitations for fraud (Cal. Code Civ. Proc. § 338(d)), which expired in December 2022 at the latest, before SCI filed suit on January 12, 2023;

2. The Agreement's six-month contractual limitations period (§ 5.2), which required SCI to file any claim within six months of discovery;

3. The Agreement's 30-day acceptance provision (§ 1.2), which established deemed acceptance of all deliverables and associated invoices.

Each of these periods independently bars SCI's fraud claim. Neither the delayed discovery rule nor the continuous accrual theory can salvage SCI's untimely claim given SCI's direct access to MPH's engineering team and years of review and approval of the allegedly fraudulent invoices. Summary judgment on SCI's fraud claim is therefore warranted based on these limitations periods alone, in addition to the substantive defects noted elsewhere in this motion.

**II.   THE BREACH OF CONTRACT CLAIMS ARE ALSO TIME-BARRED.**

**A. SCI's Breach of Written Contract Claims Are Barred, As a Matter of Law, by California's Four-Year Statute of Limitations.**

SCI's claims for breach of the written Agreement are barred by California Code of Civil Procedure § 337, which establishes a four-year limitations period for "[a]n action upon any contract, obligation or liability founded upon an instrument in writing." This four-year period applies to SCI's claims regarding 2016 Agreement, barring any breach claims that accrued before January 12, 2019 (four years before SCI filed suit on January 12, 2023).

California law establishes that a cause of action for breach of contract accrues at the time of breach. *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 488 (1996). Unlike fraud claims, the

discovery rule generally does not apply to breach of contract actions. *See April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (1983)

SCI's complaint generally alleges numerous breaches of the written 2016 Agreement dating back to 2016 (Hogan Decl. ¶ 11b; Ex. AA, Pages 2, 9, 21-23). These include claims that:

1.  MPH failed to provide adequate services under the Agreement starting in 2016;

2.  MPH improperly billed for phantom team members throughout the relationship;

3.  MPH misrepresented development resources from the inception of the Agreement;

4.  MPH failed to properly maintain software from the beginning of the relationship.

These alleged breaches, if they occurred at all (which MPH firmly denies), accrued at the time of the purported misconduct, which SCI claims began in 2016 and continued throughout the relationship. As the Ninth Circuit has recognized when applying California law, "a cause of action accrues when the breach occurs, irrespective of whether any damage is apparent or whether the injured party is aware of his right to sue." *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 529 (9th Cir. 2010).

Under this standard, all of SCI's breach of written contract claims that accrued prior to January 12, 2019, including all alleged breaches from 2016 through January 11, 2019, are time-barred under California Code of Civil Procedure § 337. This encompasses the majority of the alleged breaches in SCI's complaint, as most relate to conduct beginning in 2016.

The Northern District has consistently enforced this four-year limitation in software and technology contract disputes. In *Oracle America, Inc. v. Hewlett Packard Enterprise Co.*, 971 F. Supp. 2d 975, 985-86 (N.D. Cal. 2013), the court dismissed breach of contract claims that accrued more than four years before filing, despite the plaintiff's argument that the breaches were part of an ongoing pattern. Similarly, in *Synopsys, Inc. v. ATopTech, Inc.*, 2015 WL 1197693, at *4 (N.D. Cal. Mar. 16, 2015), the court held that breach of contract claims accrued at the time of breach, not when damages were discovered.

SCI cannot avoid this limitations period by characterizing its claims as a "continuing breach." California courts have rejected the continuing breach theory for standard contract claims, holding that "a breach of contract claim accrues at the time of the breach, which then starts the

Computerlaw Group LLP
www.computerlaw.com^sm

limitations period running." *Dillon v. Bd. of Pension Comm'rs*, 18 Cal. 2d 427, 430 (1941). As noted in *FNB Mortgage Corp. v. Pacific General Group*, 76 Cal. App. 4th 1116, 1133 (1999), "[t]he continuing violation doctrine is not applicable to [breach of contract] causes."

**B. Alleged Breaches During the Limitations Period Are Independently Barred by the 30-Day Acceptance Provision As a Matter of Law; No Rejections/No Revocations Occurred.**

Even for alleged breaches occurring within the four-year statutory period (after January 12, 2019), SCI's claims are independently barred by the Agreement's 1.2 acceptance provision. The undisputed evidence shows that SCI accepted all Deliverables without objection throughout the entire relationship, including during the limitations period (Hogan Decl. ¶ 3, Ex. E). Under California law, this acceptance constitutes a waiver of breach claims related to those Deliverables. *See Wind Dancer Prod. Grp.*, 10 Cal. App. 5th at 73 (contractual acceptance provisions are enforceable); *Artificial Intelligence Corp.*, 1 Cal. App. 4th at 28 (same).

The Ninth Circuit has held that under California law, a party's acceptance without objection, as specified in a contract, precludes subsequent breach claims. *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802-03 (9th Cir. 1986). Here, SCI's failure to object to deliverables within the contractually specified 30-day period constitutes acceptance and a waiver of breach claims, even for deliverables within the statutory limitations period.

**C. Additionally, as a Matter of Law, the Six-Month Contractual Limitations Period Further Bars All Breach of Contract Claims Because No Claim Was Timely Made.**

Beyond the statutory limitations period and the Agreement's acceptance provision, SCI's breach of written contract claims are further barred by the Agreement's six-month contractual limitations period. Agreement, Section 5.2. Nothing was timely filed.

In sum, California law clearly permits contracting parties—and especially merchants— to agree to a shorter limitations period than that prescribed by statute, so long as the time provided is reasonable. *Moreno v. Sanchez*, 106 Cal. App. 4th at 1430. The Ninth Circuit, applying California law, has consistently upheld contractual limitations periods of six months or less. In *Han v. Mobil Oil Corp.*, 73 F.3d at 877, the court upheld a six-month limitation as "reasonable," and in

*Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*, 38 F.3d 1118 (9th Cir. 1994), the court enforced a 30-day limitations period.

The six-month contractual period is particularly reasonable in the software context, where prompt resolution of issues is essential to maintain project momentum and accurate recordkeeping. As the court recognized in *Lewis v. YouTube, LLC*, 197 Cal. App. 4th 1387, 1394 (2011), contractual limitations periods in technology agreements serve important interests in "providing repose and protection against stale claims and promot[ing] judicial efficiency."

Under the Agreement's six-month provision, SCI's breach of written contract claims are time-barred because SCI did not file suit within six months of any alleged breach. Can a merchant wait years to claim breach when a contract expressly limits time periods to do so?  SCI filed suit on January 12, 2023 (Hogan Decl. ¶ 11b; Ex. AA, Page 9). All alleged breaches occurred well before that time.

**D. The Breach of Oral "Agreement II" Claims Are Also Barred by Limitations**

SCI's claims for breach of alleged oral agreements, including the fictitious "Agreement II," are barred by California Code of Civil Procedure § 339, which establishes a two-year limitations period for "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing." This two-year period bars any claims for breach of oral contract(s) that accrued before January 12, 2021 (two years before SCI filed suit on January 12, 2023).

SCI alleges the existence of one oral agreement, SCI calls "MPH Agreement II," which supposedly modified or replaced the written Agreement (Hogan Decl. ¶ 11b; Ex. AA, Pages 2, 9, 18, 21-23). According to SCI's complaint, this (oral) "Agreement II" was formed and subsequently breached as early as 2017 (Hogan Decl. ¶ 11b; Ex. AA, Page 9).  That is certainly two years beyond the two-year statute of limitations. Id.

Under California law, the two-year statute of limitations for oral contracts begins to run at the time of breach, not when damages are discovered. This principle is codified in California Code of Civil Procedure § 339, which states that an action upon a contract not founded upon an instrument of writing must be commenced within two years (West's Ann.Cal. C.C.P. § 339). The

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

Computerlaw Group LLP
www.computerlaw.com[sm]

statute of limitations for an oral contract typically starts running upon the negligent breach of the contract. *Seelenfreund v. Terminix of Northern Cal., Inc.*, 84 Cal.App.3d 133 (1978).

As this District has recognized, "a breach of contract claim—including breach of an oral contract—accrues at the time of breach, which then starts the limitations period running." *Creditors Collection Serv. of Sacramento v. Castegnaro*, 17 F. Supp. 2d 1079, 1082 (N.D. Cal. 1998).

SCI's own complaint places the alleged breaches of oral agreements well outside the two-year limitations period. SCI claims that oral agreements were formed and breached between 2017 and 2020 (Hogan Decl. ¶ 11b; Ex. AA, Pages 9, 18, 21-23). These alleged breaches accrued at the time they occurred, making all claims for breaches before January 12, 2021, time-barred under Section 339.

**E. Undisputed Evidence Confirms SCI Had Knowledge of Any Alleged Oral Agreement Breach Long Before the Limitations Period and Never Objected At All and Did Not File.**

The evidence clearly establishes that SCI was aware of the existence and terms of any alleged oral agreements (if they existed, which MPH denies) well before the limitations period expired. SCI's own communications from 2020 and 2022 refer exclusively to the written Agreement as governing the parties' relationship, contradicting SCI's current claim that oral agreements modified or superseded the written Agreement (Hogan Decl. ¶ 11b; Ex. AF, AG). These communications are significant because they demonstrate SCI's knowledge of any alleged oral agreements years before filing suit. Under California law, this knowledge started the limitations clock running, regardless of when SCI claims to have "discovered" the alleged breaches. *See Angeles Chem. Co. v. Spencer & Jones*, 44 Cal. App. 4th 112, 119 (1996) (holding that knowledge of facts, not their legal significance, starts the statute of limitations).

The Ninth Circuit has similarly held that under California law, a plaintiff's knowledge of the facts underlying a claim triggers the limitations period, regardless of when the plaintiff realizes the legal significance of those facts. *See Platt Elec. Supply*, 522 F.3d at 1054. Here, SCI's knowledge of any alleged oral agreements—evidenced by its communications referencing the

parties' contractual relationship—triggered the limitations period for any breach claims, rendering claims outside the statutory periods time-barred.

**F. The Contractual Six-Month Period is Also a Contractual Time Bar.**

Beyond the statutory two-year limitations period, SCI's oral contract claims are independently barred by the Agreement's Section 5.2 six-month contractual period. Agreement (Hogan Decl. ¶ 2; Ex. A, § 5.2).

California courts have held that contractual limitations periods apply not only to claims directly based on the written contract but also to related claims, including those based on alleged oral agreements that modify or relate to the written contract. *See Moreno*, 106 Cal. App. 4th at 1430. In *Han*, the Ninth Circuit upheld application of a contractual limitations period to claims beyond direct breach of the written agreement, including related oral promises. 73 F.3d at 877. SCI's alleged oral contracts, particularly the fictional "MPH Agreement II," directly relate to the services provided under the written Agreement and therefore fall within the scope of Section 5.2's six-month limitation provision. Because SCI did not file suit within six months of any alleged breach of these purported oral agreements, the claims are time-barred under the contractual limitations period.

**G. The Statute of Frauds Bars Any Alleged Oral Agreement; None Can Exist Here**

In addition to the limitations bars, SCI's claims for breach of oral agreements are further precluded by the California Statute of Frauds and by the Agreement's integration clause. Section 7.5 of the Agreement states:

> This Agreement, and Exhibits hereto and the documents and instruments and other agreements among the parties hereto referenced herein: (a) constitute the entire agreement among the parties with respect to the subject matter hereof and supersede all prior agreements and understandings both written and oral, among the parties with respect to the subject matter hereto.

(Hogan Decl. ¶ 2; Ex. A, § 7.5).

Under California law, especially in commercial agreements between merchants, an integration clause precludes consideration of prior or contemporaneous oral agreements that contradict, vary, or add to the terms of the integrated written contract. *Masterson v. Sine*, 68 Cal.

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

2d 222, 225 (1968). The Ninth Circuit, applying California law, has consistently upheld integration clauses to bar claims based on alleged oral agreements. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996)*, (integration clause barred claims based on alleged oral representations);

The Agreement's integration clause explicitly supersedes "all prior agreements and understandings both written and oral," precluding SCI's claims based on the fictitious "MPH Agreement II" or other alleged oral agreements. Even if such claims were not time-barred (which they are), they would be unenforceable due to the integration clause and the Statute of Frauds.

**H. SCI's Own Communications Confirm Only One Written Agreement Here.**

SCI's own communications directly contradict its current claims regarding oral agreements and further demonstrate the time-barred nature of its breach claims. In 2020 and 2022, SCI explicitly referenced the written Agreement as governing the parties' relationship, with no mention of any "Agreement II" or other oral modifications (Hogan Decl. ¶ 11b; Ex. AF, AG). These communications are significant for two reasons:

1. They confirm SCI's knowledge of the contractual relationship and any alleged breaches years before filing suit, triggering the limitations periods;

2. They directly contradict SCI's current claims regarding oral agreements, supporting enforcement of the integration clause.

This District has consistently held that a party's contemporaneous communications acknowledging a written agreement contradict later claims of oral modifications. *See Nevro Corp. v. Bos. Sci. Corp.,* 312 F. Supp. 3d 726, 733 (N.D. Cal. 2018) (party's emails referring to written agreement undermined claims of oral modification). SCI's communications thus reinforce the time-barred nature of its breach claims and the validity of the integration clause.

**III.   THE AGREEMENT'S NOTICE PROVISION PROVIDES A FURTHER INDEPENDENT BAR**

Beyond the statutory and contractual limitations periods, the integration clause and the Statute of Frauds, SCI's breach claims are further barred by the Agreement's notice provision.

Section 7.9 of the Agreement requires that "[a]ny notice required to be given under this Agreement shall be in writing" and delivered according to specified methods (Hogan Decl. ¶ 2; Ex. A, § 7.9). California courts enforce contractual notice provisions as written. *See Magic Carpet Ride LLC v. Rugger Inv. Grp. L.L.C.*, 41 Cal. App. 5th 357, 364 (2019) (enforcing contractual notice provision); *Cornwell v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 224 Cal. App. 3d 995, 999 (1990) (same). The Ninth Circuit has similarly upheld contractual notice requirements under California law. *See Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 873 (9th Cir. 1979).

SCI failed to provide written notice of any alleged breach as required by Section 7.9, further barring its breach claims (Hogan Decl. ¶ 11e). This failure to comply with the contractual notice requirement provides yet another basis for dismissing SCI's time-barred breach claims. SCI's breach of contract claims are time-barred under multiple independent limitations periods:

1. California's four-year statute of limitations for written contracts (Cal. Code Civ. Proc. § 337), which bars claims for breaches before January 12, 2019;

2. California's two-year statute of limitations for oral contracts (Cal. Code Civ. Proc. § 339), which bars claims for breaches before January 12, 2021;

3. The Agreement's six-month contractual limitations period (§ 5.2), which bars all breach claims not filed within six months of accrual;

4. The Agreement's 30-day acceptance provision (§ 1.2), which established deemed acceptance of all deliverables and associated services and bars all claims altogether.

In addition, SCI's breach claims are further precluded by the Agreement's integration clause (§ 7.5), which supersedes all prior oral agreements, and its notice provision (§ 7.9), which SCI failed to follow. SCI's own communications confirming the parties operated under the written Agreement further contradict its current claims. SCI could have arbitrated its claims in 2017, 2018, 2019 but it did not. Instead, it accepted discounts and deferrals and had MPH increase staff and produce additional features, functions and improvements. This is not a software defect case; this is a case where a happy client decided to steal an entire team and then use a lawsuit to "provide cover" and to assert "the best defense is a good offense." Given these multiple, independent bases for finding SCI's breach claims time-barred, summary judgment on these claims is warranted based

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

on the limitations periods alone. The fact is that this lawsuit was filed after SCI misappropriated MPH's entire team including all of its trade secret and confidential intellectual property. How can it not be so given that SCI was seeking pricing reductions for the next (2023) year and never any complaint or other notice about any improper billings in any of the prior 6 years?

**IV.     SCI'S TORT CLAIMS MERELY RESTATE CONTRACT-BASED GRIEVANCES AND ARE BARRED AS A MATTER OF LAW AS WELL.**

As a threshold legal matter, this Court must determine whether SCI's claims are fundamentally breaches of contract which SCI attempts to "repackage" as a "fraud" tort or whether there are any genuine independent tort claims supported by actual admissible evidence. The Initial Disclosures reveal no actual evidence. In April, 2025, the California Supreme Court clarified in *New England Country Foods, LLC v. VanLaw Food Products, Inc.*, 2025 WL 1190980 (Cal., 2025), that California Civil Code Section 1668 does not preclude "parties from limiting their liability for pure breaches of contract absent a violation of an independent duty that falls within the ambit of section 1668." The Court explained that "[w]here the claims asserted are 'nothing more than a breach of… contractual obligations,' Section 1668 does not apply." *New England Country Foods, LLC v. VanLaw Food Products, Inc.*, 2025 WL 1190980, at *8 (Cal., 2025).

All of SCI's claims stem from the same fundamental contractual allegation—that MPH failed to perform its contractual obligations regarding software delivery. Unlike in *New England Country Foods*, where the defendant allegedly hatched a "backup plan" to intentionally interfere with the plaintiff's customer relationship, MPH's conduct was entirely confined to the scope of the parties' contractual relationship. SCI's alleged damages flow directly from the purported breach of contract, not from any independent tortious conduct. And, nothing otherwise is disclosed in SCI's Initial Disclosures. Hogan Decl. ¶ 15; Russo Decl. ¶¶ 5-7.

The California Supreme Court specifically noted that mechanisms exist to ensure "parties cannot proceed in tort for what are essentially breaches of contract, " including the economic loss rule, which bars recovery in tort "unless [the party] can demonstrate harm above and beyond a broken contractual promise." *New England Country Foods*, 2025 WL 1190980, at *8. None are disclosed here.

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

Here, SCI cannot demonstrate any harm beyond the alleged breach of the 2016 Agreement. The "phantom QA" employee that SCI claims exemplifies fraud was, in fact, Christopher Rosales, billed at a $1,300/month discount (Hogan Decl. ¶ 7). The additional "Software Engineer" discounts saved SCI $425,318 (Hogan Decl. ¶ 9). These business accommodations—which ultimately benefited SCI—cannot transform a contract dispute into a tort claim. The Court must rule on this undisputed fact given SCI's failure to disclose otherwise in Initial Disclosures.

California law enforces integration clauses to bar extrinsic evidence. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 993 (2004). Here, SCI's fraud claims rely on alleged misrepresentations directly contradicted by the Agreement's terms (Hogan Decl. ¶ 11). The "fraud" claim is merely a repackaged contract claim, and it is barred by the economic loss rule and the 2016 Agreement's limitation of liability provisions and waiver of consequential and other indirect damages remain fully enforceable. SCI's failure to disclose any form of direct damages or any calculations thereof in its Initial Disclosures bars it from now contesting the lack of any basis for its claims given the parties' written Agreement and the long delay in asserting any claims. No basis exists for going forward with any aspect of this lawsuit and no injunctive relief can possibly be justified nor can any other alleged claim survive.

## CONCLUSION

For all the foregoing reasons, Defendant is entitled to summary judgment as a matter of law on all purported "causes of action. " The Agreement—an integrated, negotiated agreement between merchants. There is no genuine issue for trial, only wasted expense and delay. In today's economy, small businesses like Defendant can ill afford to defend meritless claims through discovery and trial. Granting summary judgment is both legally required and equitable: it spares the parties (and the court) the unnecessary burden and it prevents the undue economic harm that baseless litigation imposes.  SCI could have arbitrated its monetary claims in 2017, 2018, 2019, 2020, 2021 or even in 2022 but it cannot receive invoices, make payments, and then hatch a lawsuit in derogation of every aspect of the parties' Agreement to try to justify its raiding and misappropriating of MPH's software team.  That is what this case is all about.

Computerlaw Group LLP
www.computerlaw.com^sm

Respectfully submitted,

Dated: June 17, 2025                                          COMPUTERLAW GROUP LLP


By: _____

Jack Russo

Attorneys for Defendant and Counter-

Claimant MPH INTERNATIONAL LLC

**Computerlaw Group LLP**
www.computerlaw.com<sup>sm</sup>