Gary S. Sedlik, Esq. (CA Bar No. 181192)
SEDLIKGROUP, P.C.
124 Marine Ave. (Mailing - P.O. Box 3238)
Manhattan Beach, CA 90266
Phone: (310) 439-9986
Email: gary@sedlikgroup.com

Attorneys for Plaintiff and Counterclaim Defendant
Support Community, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SUPPORT COMMUNITY, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MPH INTERNATIONAL LLC, a Nevada Limited Liability Company; and DOES 1 through 25, inclusive,<br><br>Defendants<br><hr><br>AND RELATED COUNTERCLAIMS | Case No. 4:23-cv-04911-JSW<br><br>Before the Hon. Jeffrey S. White, U.S. District Judge<br><br>**SUPPORT COMMUNITY, INC.'S RESPONSE TO MPH INTERNATIONAL, LLC'S ADMINISTRATIVE MOTION TO WITHDRAW MOTION FOR SUMMARY JUDGMENT PURSUANT TO CIVIL LOCAL RULE 7-11**<br><br>Date: September 12, 2025<br>Time: 9:00 AM<br>Location: 1301 Clay Street, Oakland, CA 94612 Courtroom 5, 2nd Floor<br><br>Trial date: September 14, 2026 |

**RESPONSE TO ADMINISTRATIVE MOTION TO WITHDRAW**

The Administrative Motion to Withdraw ("Motion") the Corrected Motion for Summary Judgment filed by Defendant and Counterclaimant MPH International LLC ("MPH") presents this Court and Support Community, Inc. ("SC") with an unfortunate, but serious, situation.

As discussed in MPH's motion to withdraw, MPH and its counsel Jack Russo used Generative Artificial Intelligence ("GAI") to prepare and draft MPH's Corrected MSJ. After GAI drafted the Corrected MSJ, MPH and Mr. Russo failed to review the legal citations and quotations that GAI inserted throughout the Corrected MSJ before filing it with this Court. MPH presented to this Court as valid legal authority at least twelve cases that were (1) fabricated; (2) utilized "real" case names with fabricated case citations; and (3) utilized "real" cases with entirely fabricated quotations purporting to be from the Court's holdings in those cases. See Declaration of Gary S. Sedlik ("Sedlik Decl.") at ¶5 and Exhibit A. The fabricated legal authority in MPH's brief constitutes 27% of all of the caselaw cited in MPH's Corrected MSJ. Id. More than one out of four of the cases cited in MPH's Corrected MSJ as binding legal authority are fabricated.

SC was not aware that MPH had used GAI to prepare and draft its Corrected MSJ. Id. at ¶6. As a result, SC diligently worked to prepare a full and complete opposition to the MSJ, including conducting extensive legal research, drafting a 25-page opposition brief, researching and drafting three supporting declarations, and researching and gathering numerous case documents to present to the Court in its opposition. Id. SC filed its opposition with the Court, including three declarations, on July 1, 2025 [Docket #67]. On August 5, 2025, when beginning to prepare for the upcoming hearing on MPH's Corrected MSJ, SC's counsel Gary Sedlik began to scrutinize MPH's Corrected MSJ and discovered the fabricated legal citations and quotations for the first time. Id. at ¶7. Mr. Sedlik confirmed that the legal authority was not genuine, using three separate brief analyzing services (including Westlaw) to process the citations in MPH's brief. Id.

On August 6, 2025, Mr. Sedlik prepared a detailed letter to MPH's counsel, Jack Russo. Id. at ¶8. Given the nature of the subject matter, Mr. Sedlik reached out directly to Mr. Russo by email (at 11:59AM) to inform him that the letter would be forthcoming. Id. Specifically, Mr. Sedlik stated "Good morning, Jack. […] Something quite serious has arisen relating to the case

for which I am currently preparing a letter to you. I hope to send it shortly. After you have a chance to review the letter, we should determine a time to talk. Thank you." Id. Mr. Sedlik reached out to Mr. Russo multiple additional times via email, text message and telephone calls to Mr. Russo's work phone and cell phone but did not receive a response. Id.

At 3:40 PM, Mr. Russo responded to Mr. Sedlik's earlier text message, stating "I'm in a settlement meeting and have dinner plans with my wife but I can try you from my car in a couple of hours." Id. at ¶9. Mr. Sedlik immediately replied, texting Mr. Russo:

> I would like to give you a courtesy heads up about the letter I'm sending over but obviously understand that you have other things going on. I will hold off for a couple of hours with the hope that we can connect. If we aren't able to talk I'll send the letter no later than 6pm. Thank you.

Id. Mr. Russo never called. At 6:15 PM, Mr. Sedlik emailed his letter to Mr. Russo. Id.

Given the nature of multiple fabricated case citations through MPH's brief, Mr. Sedlik's letter urged Mr. Russo to rapidly act so that the Court would not unnecessarily spend time analyzing MPH's brief. Sedlik Decl. at Exh. A. Specifically, Mr. Sedlik suggested that the parties enter into and file a stipulation to withdraw MPH's Corrected MSJ within 24 hours of Mr. Sedlik's letter. Id. Mr. Sedlik also requested that MPH reimburse SC for its legal fees and costs associated with the preparation of an opposition to MPH's Corrected MSJ (to be withdrawn) as well as associated costs relating to analysis and discovery of MPH's fabricated citations. Id.

Mr. Russo did not respond to Mr. Sedlik's letter for more than 48 hours, sending an email at 7:23 PM on Sunday, August 9, 2025. Id. at ¶11. In his email, Mr. Russo acknowledged that MPH had used fabricated legal authority and agreed that MPH should withdraw its motion. Id. Mr. Russo insisted, however, that SC stipulate that MPH could re-file additional motions for summary judgment. Id. Mr. Russo also refused to commit to reimbursing SC for its legal fees incurred to oppose the motion, stating "send me your time records and paid invoices on your work on the opposition and I will let you know if it can be covered by me out of my pocket." Id. Mr. Russo further stated that "if we cannot agree on a reasonable number then to assure you of my good faith here I will personally cover the fees spent on your opposition if MPH does not otherwise prevail and/or otherwise cannot pay the reasonable fees on this particular aspect of the case." Id.

2

Mr. Sedlik responded to Mr. Russo's letter at 10:34 PM on August 9, stating that SC was agreeable to entering into a stipulation with MPH to withdraw the motion (as offered by SC in its original), but that SC would not agree that MPH was permitted to file a second motion for summary judgment. Id. at ¶12. Mr. Sedlik also reminded Mr. Russo that

> …significant fees were expended to oppose a motion based largely on fabricated cases. This is not fair or equitable to Support Community and I am not sure there is an argument to make that Support Community is entitled to anything other than 100% of the fees it spent to prepare the opposition.

Mr. Russo did not respond to Mr. Sedlik's email. Id.

The parties talked by phone on August 10. During the call, Mr. Russo told Mr. Sedlik that: (1) the Court would be angry with Mr. Sedlik because he had not "caught" and pointed out MPH's fabricated cases in SC's opposition brief; (2) Mr. Sedlik's billing rate of $725/hour was "far too high" because he was "not a partner with White & Case anymore" and probably "worked out of his house"; (3) the estimated fees relating to the preparation of SC's opposition were unreasonably high because Mr. Russo hadn't "spent more than a total of 15 hours" to research and draft the entire Corrected MSJ and associated pleadings; (4) SC should be thankful to MPH for filing the Corrected MSJ because it included a lot of superfluous background information regarding the case and SC would have the benefit of re-using the arguments presented in its opposition for other motions in the case; and (5) that SC's opposition brief was of poor quality and did not merit the legal fees charged. Id. at ¶13. Notwithstanding Mr. Russo's email of the previous evening, Mr. Russo said during the call that neither Mr. Russo nor MPH would reimburse the actual legal fees that SC incurred in preparing its opposition, but rather would review the associated legal invoices and decide how much, if anything, MPH or Mr. Russo would be willing reimburse SC for its legal fees. Id. at ¶14. Mr. Russo also wanted to engage Mr. Sedlik in a discussion about whether the fabricated cases were a serious issue given that MPH also had included "legitimate" legal citations in the brief. Id.

Mr. Sedlik refused to engage in any arguments or debates with Mr. Russo. Id. at ¶15. Nevertheless, since it was MPH's tactical choice to file a motion for summary judgment before discovery had been conducted with knowledge of this Court's local rules, Mr. Sedlik informed

3

1    Mr. Russo that SC would not stipulate that MPH could file additional motions for summary
2    judgment. <u>Id.</u> Mr. Sedlik reminded Mr. Russo that SC had suffered real consequences as a direct
3    result of his use of GAI to prepare and draft MPH's motion. <u>Id.</u> Specifically, SC incurred
4    $30,875.50 in legal fees to review and analyze MPH's Corrected MSJ, including the associated
5    declarations and hundreds of pages of attachments, to conduct extensive legal research and
6    prepare a detailed and thorough opposition, including conducting multiple witness interviews,
7    reviewing underlying case documents and files, drafting a 25-page opposition brief, and preparing
8    three lengthy and detailed declarations. <u>Id.</u> SC also had incurred additional fees of $5,546.25
9    (representing 7.65 hours of Mr. Sedlik's time) to review, research, analyze, confirm and prepare
10   the detailed letter to Mr. Russo regarding the fabricated caselaw in MPH's brief. <u>Id.</u>

11       Mr. Russo forwarded an email with an attached case that he contended "minimized" any
12   sanctions that the Court would impose on him or MPH, stating that the "average sanction [was]
13   well under $5000." <u>Id.</u> at ¶16. Mr. Sedlik responded to Mr. Russo stating that he was not willing
14   to engage in further discussions with him regarding sanctions, but also noting that the first case
15   cited in the opinion Mr. Russo had sent involved a party who was sanctioned $5000 by the Court
16   <u>after</u> the offending party had already "paid opposing counsel's fees for defending the Motions
17   [containing fabricated caselaw]." See <u>Wadsworth v. Walmart</u> (D. Wyo. 2025), 348 F.R.D. 489.
18   <u>Id.</u> After numerous additional emails, it was clear that the parties could not agree on a stipulation
19   and Mr. Sedlik suggested that Mr. Russo file an administrative motion, which he did. <u>Id</u>.

20       SC is not in a position to instruct this Court how to address MPH's presentation of a
21   summary judgment motion containing twelve fabricated case citations and quotations, but SC
22   strongly believes that a "withdrawal" of MPH's motion with no repercussions to MPH is both
23   improper and inequitable. As an initial matter, withdrawal is procedurally improper given that the
24   Court has already issued an order [Docket #76] denying MPH's request for sanctions that was
25   part of its Corrected MSJ. Permitting MPH to "withdraw" its Corrected MSJ would seemingly
26   also bring into question the validity of that order which the Court has already issued.

27       Further SC notes that this Court has broad powers to sanction MPH and its counsel pursuant
28   to its inherent authority, FRCP Rule 11 as well as pursuant to 28 U.S.C. § 1927. The U.S.

Supreme Court, in <u>Chambers v. Nasco</u>, Inc., 501 U.S. 32 (1991), specifically held that:

> Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. In invoking the inherent power to punish conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction, which may range from dismissal of a lawsuit to an assessment of attorney's fees.

<u>Id.</u> The Court further held federal courts may:

> exercise their inherent power to assess such [attorneys'] fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as when the party practices a fraud upon the court, or delays or disrupts the litigation or hampers a court order's enforcement. Id. (internal citations omitted).

MPH's extensive use of fabricated citations and quotations throughout its Corrected MSJ is the type of situation contemplated by the Court in <u>Chambers</u>. SC respectfully does not concur with the argument that Mr. Russo's conduct is the result of an innocent or excusable "mistake." Rather, in SC's opinion, Mr. Russo chose to utilize GAI to reduce his client's attorneys' fees and to enable him to more quickly prepare and file a motion that otherwise had no pending deadline or other urgency to be filed. If Mr. Russo had reviewed the cases cited in his brief, he would have discovered that GAI had "hallucinated" at least twelve fabricated citations and quotations. Not only did Mr. Russo utilize GAI to draft a significant filing in federal court, by his own admission he did not review the resulting brief or check the citations before filing the brief with this Court.

For all of these reasons, SC respectfully requests that this Court issue an order striking MPH's Corrected MSJ but leaving its order reflected in Docket #76 in place with full force and effect. SC also respectfully requests that this Court order MPH and its counsel, Jack Russo, jointly and severally, to reimburse SC in the amount of $36,421.75, representing the actual attorneys' fees and costs SC incurred in responding to and addressing the serious issues in MPH's Corrected MSJ.

Dated: August 18, 2025          Respectfully Submitted,
                                /s/ _____
                                Gary S. Sedlik
                                SedlikGroup, P.C., Attorneys for Plaintiff and
                                Counterclaim Defendant Support Community, Inc.