Gary S. Sedlik, Esq. (CA Bar No. 181192)
SEDLIKGROUP, P.C.
124 Marine Ave. (Mailing - P.O. Box 3238)
Manhattan Beach, CA 90266
Phone: (310) 439-9986
Email: gary@sedlikgroup.com

Attorneys for Plaintiff and Counterclaim Defendant
Support Community, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SUPPORT COMMUNITY, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MPH INTERNATIONAL LLC, a Nevada Limited Liability Company; and DOES 1 through 25, inclusive,<br><br>Defendants<br><br>AND RELATED COUNTERCLAIMS | Case No. 4:23-cv-04911-JSW<br><br>Before the Hon. Jeffrey S. White, U.S. District Judge<br><br>**SUPPORT COMMUNITY, INC.'S RESPONSE TO MPH INTERNATIONAL, LLC'S ADMINISTRATIVE MOTIONS PURSUANT TO CIVIL LOCAL RULE 7-11 [Docket #88 and #89]**<br><br>OSC Hearing Date: September 26, 2025<br>Time: 9:00 AM<br>Location: 1301 Clay Street, Oakland, CA 94612 Courtroom 5, 2nd Floor<br><br>Trial date: September 14, 2026 |

**RESPONSE TO ADMINISTRATIVE MOTIONS**

The Administrative Motions filed by Defendant and Counterclaimant MPH International LLC ("MPH") both seek unnecessary and unauthorized relief that was not requested by the Court in its recent order setting a hearing on an Order to Show Cause relating to sanctions to be assessed against MPH and/or MPH's counsel Jack Russo for violations of FRCP, Rule 11 ("OSC Order") [Docket #86]. In contrast, the Court specified in the OSC Order that "The Court will give the parties the opportunity to address why these sanctions are or are not appropriate <u>at the hearing</u>." OSC Order at 4:11-12 (emphasis supplied).

Presumably, part of the reason that the Court did not invite additional briefing was because the parties have already filed briefs and detailed declarations on this topic in connection with MPH's previous Administrative Motion to Withdraw [Docket #82]. Further, the Court's OSC Order indicated that the Court was inclined to require MPH and/or Mr. Russo to reimburse Support Community, Inc. "(SC") for "[attorney's] fees incurred after [SC] discovered the hallucinated cases including reasonable fees incurred in connection with appearing at the show cause hearing." OSC Order at 4:4-5. Inviting additional briefing on the topic would result in more fees to be incurred by SC relating to the preparation for the show cause hearing, particularly given the Court's instructions that the parties would have ample opportunity to present their arguments during the hearing.

Nevertheless, at 8:06 PM on September 16, 2025, Mr. Russo's office emailed a letter and four pleadings to counsel for SC, Gary Sedlik, insisting on a response from Mr. Sedlik no later than 5:00PM on the following day, September 17, 2025, and stating that "If we do not receive agreement by that time, we will file the L.R. 7-11 motion with a declaration reflecting your position." Declaration of Gary S. Sedlik ISO of SC Response to Administrative Motions ("Sedlik Decl.") at 3. Prior to sending this email, Mr. Russo had not reached out to Mr. Sedlik or otherwise alerted Mr. Sedlik that these proposed pleadings would be forthcoming with an urgent response demanded in (effectively) less than eight working hours. Sedlik Decl. at 4.

Mr. Sedlik did not see Mr. Russo's email until nearly midnight on September 16 and was traveling and out of the office nearly the entire day on September 17. Sedlik Decl. at 5. Despite

away from the office and occupied with other pressing matters, Mr. Sedlik diverted time to Mr. Russo's four proposed pleadings, reviewing them in detail, comparing their substance with prior pleadings presented to this Court and communications between Mr. Sedlik and Mr. Russo, and discussing them with SC. Id. Mr. Sedlik then took additional time to prepare a detailed letter responding to Mr. Russo in advance of the stated 5:00PM deadline. Sedlik Decl. at 6.[1] All of this, of course, resulted in SC incurring several hours of additional attorneys' fees relating to preparation for the upcoming OSC hearing.

After carefully reviewing the four proposed pleadings as well as Mr. Russo's letter, SC detailed the reasons that it declined to stipulate to Mr. Russo's request to file additional pleadings, which consisted of the fact that: (1) the Court had not authorized such additional pleadings; (2) filing more pleadings would increase the attorneys' fees incurred by SC to respond to the Administrative Motions and the substance of the pleadings as well as to prepare for the OSC hearing; and (3) most importantly, the proposed pleadings recited largely redundant information that MPH and Mr. Russo had already presented to the Court in connection with the prior Administrative Motion, or otherwise contained irrelevant information. Sedlik Decl. at 7. Further, Mr. Russo had presented to Mr. Sedlik no legal basis or argument to justify an urgent need to file the additional pleadings nor why the same information could not be conveyed to the Court during the upcoming hearing, as ordered by the Court in its OSC Order. Id. Mr. Sedlik also requested in his letter that Mr. Russo contact Mr. Sedlik by telephone with any such urgent requests so that counsel could discuss these issues. Sedlik Decl. at 8. At no time during this process did Mr. Russo reach out to Mr. Sedlik via telephone. Id. MPH then filed its two administrative motions late the following evening, Friday, September 19, at 9:41PM and 10:05PM (approximately thirty hours after the deadline assigned for Mr. Sedlik's response). Id.

---

[1] Although Mr. Russo generally describes the background of his attempt to "meet and confer" with Mr. Sedlik in his supporting declaration [Docket #88-2], he omits the time that his office first emailed the pleadings and letter to Mr. Sedlik (late in the evening on September 16), the 5:00 PM deadline imposed for Mr. Sedlik to response, and the substance of Mr. Sedlik's detailed letter responding to Mr. Russo. Sedlik Decl. at 9. Paragraph 4 of Mr. Russo's declaration states that Mr. Sedlik's letter is attached to Mr. Russo's declaration, but it is not attached.

1  There is no new information contained in Mr. Russo's proposed declaration, other than that he now asserts that he was suffering from a bee sting around the time of the MSJ filing. The rest of his declaration is composed of arguments against the Court's intended sanctions, all of which could be presented to the Court at the upcoming hearing. Similarly, the proposed declaration of Ms. Tian, is not only irrelevant to the Court's evaluation of the proposed Rule 11 sanctions but also introduces the additional complexity of filing documents under seal and determining how (or whether) this information could even be discussed at the upcoming OSC hearing.[2]

SC will not spend significant time in this response to argue against Mr. Russo's proffered alternatives to the Court's intended sanctions, other than to note that the process of reviewing the proposed pleadings, scrambling to prepare a response within Mr. Russo's demanded deadline, and preparing this responsive pleading has added hours to the attorney's fees SC has incurred in connection with the preparation for the upcoming OSC hearing.

Nevertheless, to the extent the Court considers additional information presented in MPH's Administrative Motions, SC respectfully requests that SC be permitted to raise two issues for the Court to consider, given that they have been raised repeatedly by Mr. Russo in his requests that the Court not impose sanctions on MPH or Mr. Russo. First, Mr. Russo asserts that he was recovering from (or still had) COVID at the time of the MSJ filing, contributing to his inability to review the citations and quotations in MPH's filing which was submitted to the Court on June 17, 2025. See Russo Declaration [Docket #82-1] at paragraph 4 ("I was recovering…due to a Covid-19 illness"); "Proposed" Russo Declaration [Docket #88-1] at paragraph 5 ("I actually had Covid-19…"). Mr. Russo accurately states in his earlier declaration that he had informed Mr. Sedlik of his Covid-19 illness, including attaching an email he sent to Mr. Sedlik on May 23, 2025, three weeks before MPH filed its Motion for Summary Judgment that is the subject of the Court's OSC hearing. See Russo Declaration [Docket #82-1] at Exhibit B.[3]

---

[2] To be clear, SC fully acknowledges and respects Ms. Tian's privacy rights and does not oppose the request to seal her proposed declaration should the Court find that it should be considered in connection with the OSC hearing. SC merely asserts that the information in Ms. Tian's declaration is not relevant or helpful to the Court in determining the appropriate level or amount of sanctions against MPH and/or Mr. Russo in connection with Mr. Russo's conduct in violation of Rule 11.

[3] SC in no way no seeks to make light of or otherwise diminish Mr. Russo's illness.

3

1

2    In spite of his illness, however, in the ensuing three weeks, Mr. Russo and his office

3    prepared and filed a 25-page summary judgment motion along with three declarations attaching

4    nearly 550 pages of exhibits. As such, SC does not believe that it would be necessary or

5    appropriate for the Court to take into account Mr. Russo's illness when considering appropriate

6    sanctions for violating Rule 11, given that notwithstanding the illness he was able to research,

7    draft and file a comprehensive summary judgment motion in the ensuing weeks.

8    Second, as Mr. Russo asserts and SC does not contest, Mr. Russo has had an extensive legal

9    career in Silicon Valley that has touched upon many leading-edge technologies. In fact, in

10   preparation for the upcoming OSC hearing, counsel for SC happened upon a podcast series hosted

11   by Mr. Russo in which he interviews various technology and legal industry leaders and

12   innovators. Sedlik Decl. at 10. On May 7, 2025, just over a month before filing MPH's Motion

13   for Summary Judgment containing fabricated and hallucinated citations and quotations, Mr.

14   Russo published a podcast episode during which he interviews a "tech-powered attorney" named

15   Alexander Paykin.[4] Id. According to the podcast's summary, the discussion covers the topics of

16   "running a virtual firm to using AI like ChatGPT and Claude for legal drafting and research,

17   Alexander [Paykin] shares how he's helping lawyers ditch inefficiency and embrace the future."

18   Id. During their discussion, Mr. Paykin reports that, by using ChatGPT's Deep Research tool, "I

19   can do a motion that used to take 20 hours in about 2 hours." Id. at approximately 12 min. and 25

20   seconds into the podcast.

21   Further, although Mr. Paykin is a passionate advocate for using AI to prepare legal

22   pleadings, he is careful to warn Mr. Russo and the listening audience that after utilizing AI to

23   prepare an initial draft of a pleading:

24   > I retain editorial discretion, meaning I will then read the thing
25   > [and] remove the parts I don't agree with, add the things I want,
     > **change case law if it got hallucinated**, or if it doesn't say what
     > it should, or if I just don't like that case[.]

---

[4] The Court may review the entire podcast by following this link, which is valid as of the preparation of this Response, September 22, 2025 - https://podcasts.apple.com/us/podcast/the-valley-current-what-is-the-mindset-of/id1500097154?i=1000706697043. For the ease of the Court, counsel has created the following short link to the podcast - http://bit.ly/429Fbbo.

Sedlik Decl. at 11 (and at approximately 24 min. and 33 seconds into the podcast). Sedik Decl. at 11. This information is provided to the Court not to demean or humiliate Mr. Russo in any way, but rather to put into context both his knowledge and appreciation of the risks and benefits of using Generative AI to draft legal briefs, the associated prevalence of "hallucinated" case law citations and quotations in the resulting products, and the use of AI as a tool for reducing attorney time and associated client costs. All of this information is discussed in detail during Mr. Russo's podcast cited above, which he published only a few weeks before preparing and filing MPH's Motion for Summary Judgment that is the subject of the upcoming OSC re sanctions.

For all of the reasons cited above, SC does not believe that the proposed declarations and other information submitted by MPH in Docket #88 or Docket #89 are appropriate or necessary pursuant to this Court's OSC Order. SC respectfully requests that the Court decline to permit MPH to file the proffered pleadings and also order that MPH shall reimburse SC for the cost of reviewing and analyzing these new filings, responding to Mr. Russo's demand letter and preparing this response and the associated declaration of Gary Sedlik as a part of the sanctions already ordered by the Court in its previous order.

Dated: September 22, 2025     Respectfully Submitted,

/s/
Gary S. Sedlik
SedlikGroup, P.C., Attorneys for Plaintiff and
Counterclaim Defendant Support Community, Inc.